Percy JONES, Sr., Petitioner–Appellant,

v.

Eddie MEYER, Respondent–Appellee.

No. 87–2325.

United States Court of Appeals,
Ninth Circuit.

Submitted April 11, 1988.

Submission vacated Sept. 29, 1988.

Resubmitted Oct. 31, 1989.

Decided April 11, 1990.

Percy Jones, Sr., Soledad, Cal., pro per.

David D. Salmon, Supervising Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before SKOPIL and HALL*, Circuit Judges, and BURNS**, District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Percy Jones was tried and convicted of first-degree murder and robbery in Alameda County Superior Court, and was sentenced to a term of life imprisonment with the possibility of parole. As a security measure during the six-week long trial, the trial judge ordered petitioner to be handcuffed to his wheelchair during the proceedings. Jones now appeals the district court's denial of his petition for habeas corpus relief. He argues: (1) that this security measure compromised his presumption of innocence and caused him pain, thereby denying him a fair trial in violation of the due process clause; and (2) that the district court's factual findings about the trial court's decision to shackle petitioner, based on the transcript of an evidentiary hearing ordered by the district court, are not entitled to a presumption of correctness, since the court at trial erred by not making explicit findings known to petitioner and allowing him an opportunity to contest their validity. We affirm.

I

▪ We review a trial court's decision to shackle a defendant under an abuse of discretion standard. *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir.1989). But we review de novo the district court's ultimate decision to grant or deny a petition for habeas corpus. *See id.* Thus, we review de novo the district court's conclusion that the trial court did not abuse its discretion. Finally, we review for clear error any factual findings made by the district court in deciding the petition. *Hayes v. Kincheloe*, 784 F.2d 1434, 1436 (9th Cir.1986), *cert. denied*, 484 U.S. 871, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987).

"Generally, a criminal defendant has a constitutional right to appear before a jury free of shackles. However, a trial judge's decision to shackle a defendant is not per se unconstitutional." *Spain*, 883 F.2d at 716 (citations omitted). The trial judge has discretion to order a " 'disruptive, contumacious, stubbornly defiant defendant[ ]' " placed in shackles, *Tyars v. Finner*, 709 F.2d 1274, 1284 (9th Cir.1983) (quoting *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970)), although this "must be limited to cases urgently demanding that action," *id.* We have recently underscored that this standard can be translated into two steps that

---

* Judge Cynthia Holcomb Hall was drawn to replace the late Judge J. Blaine Anderson.

** Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

the trial court must take. First, the court must be persuaded by compelling circumstances "that some measure was needed to maintain the security of the courtroom." *Spain*, 883 F.2d at 720. Second, the court must "pursue less restrictive alternatives before imposing physical restraints." *Id.* at 721; *see also Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970) (stating that shackling should only be used as a "last resort").

■ To satisfy this second requirement, the trial court must begin by "assess[ing] the extent of the limitations that would be present if shackles were applied." *Spain*, 883 F.2d at 721. These limitations include the following: (1) shackles may reverse the presumption of innocence by causing jury prejudice; (2) shackles may impair the defendant's mental faculties; (3) shackles may impede communication between the defendant and his counsel; (4) shackles may detract from the decorum of the judicial proceeding; (5) shackles may cause pain to the defendant. After considering these factors, the trial judge "must weigh the benefits and [these] burdens of shackling against other possible alternatives." *Id.*

■ We agree with the district court below that the state trial judge had ample justification for taking steps to maintain security in the courtroom. According to the trial judge, petitioner was handcuffed to his wheelchair during trial because he had threatened physical injury to a codefendant, the bailiff, and his own counsel. Additionally, the trial judge was aware of Jones's previous murder conviction, and had also been informed by the bailiff that petitioner had been involved in a jail altercation during jury selection. Petitioner disputed many of these contentions during the evidentiary hearing, but the district court found his testimony unconvincing.[1] The district court's factual findings aligned with the trial judge's testimony; they were not clearly erroneous.[2]

The only remaining question is whether the trial judge pursued less restrictive alternatives before imposing physical restraints. It seems obvious that he did. The judge decided that the best way to shackle Jones was to handcuff one arm to the wheelchair and cover it up with a sweater or jacket. Thus, the specific burdens described in *Spain* were not implicated more than slightly. The fact that the judge ordered the handcuffs to be covered by a sweater, long-sleeved shirt or jacket at all times minimized the possibility of jury prejudice and helped ensure that the decorum of the judicial proceeding would not be compromised.[3] The fact that the extent of the shackling was slight minimized the possibility that Jones would be in pain, that his mental faculties would be impaired, and that communication with his attorney would be impeded.

On the other hand, the trial judge understood that other forms of shackling would be too noticeable and hence too prejudicial. The trial judge testified that "there was some talk about chaining the legs and then they would shackel [sic] him some way to the—either to this thing in the floor, a hook or something, and I didn't think that was proper, and I did not want to do this." Moreover, the judge indicated that he considered packing the courtroom with bailiffs who would stand behind Jones in lieu of

---

1. Jones also maintains that he was handcuffed in reliance on a sheriff's department policy to shackle all defendants using a wheelchair. But the trial judge's testimony reveals that the decision was based on other considerations.

2. Petitioner seeks to make much of the fact that the trial court's decision to handcuff him was not based on prior conduct at trial. We have previously rejected arguments that a trial judge's decision to physically restrain a defendant must be based on his conduct at trial or in previous court proceedings. *See Wilson v. McCarthy*, 770 F.2d 1482, 1485 (9th Cir.1985).

3. Indeed, the trial judge personally inspected the covering to assure that the handcuff was not visible. Although the prosecutor briefly referred to the handcuffs in his opening statement, no other reference to them was made during the trial proceedings. We therefore agree with the district court's determination that any prejudice to petitioner was "minimal" and that the trial judge "did not abuse his discretion."

using shackles, but concluded that this step "would indicate to some of the jurers [sic] that he is peculiarly suspected, so I'd prefer not to do anything which would in any way effect his ability to have a fair trial." Under the circumstances, then, the trial judge reasonably concluded that covered-up handcuffs would be less prejudicial than extra bailiffs.

Additionally, the trial judge gave Jones the option of watching the trial via live television communication in a private room. This strikes us as a particularly sensitive way for the judge to have considered the option of removing Jones from the courtroom. The Supreme Court in *Allen* refused to hold "that a defendant cannot under any possible circumstances be deprived of his right to be present at trial." 397 U.S. at 344, 90 S.Ct. at 1061. On the other hand, the Court admitted that in some circumstances shackling a defendant would "be the fairest and most reasonable way to handle a defendant" who poses a security risk. *Id.* It is difficult to say in any given situation which option is less restrictive. By giving Jones the choice between shackling and leaving the courtroom, the trial judge allowed Jones to decide how important his right to confrontation was to him. Since Jones indicated a desire to be present, the trial judge correctly and implicitly found removing him from the courtroom to be a more restrictive option than handcuffing him to a wheelchair. *See Stewart v. Corbin,* 850 F.2d 492, 499–500 (9th Cir.1988) (relying on defendant's refusal of an offer to leave the courtroom to find that trial court considered less restrictive alternatives to shackling).

## II

■ Jones also contends that the hearing ordered by the district court to reconstruct the circumstances surrounding the trial judge's decision to handcuff him to the wheelchair fails to cure the trial judge's failure to make explicit factual findings justifying the use of shackles before they were actually placed on him. Jones also contends that the trial court should have given him an opportunity to rebut these findings before they were made final at the time of trial. Yet we have never held, and we refuse to hold now, that a trial court must conduct a hearing and make findings before ordering that a defendant be shackled. To the extent that the Eleventh Circuit has imposed such a requirement, *see Zygadlo v. Wainwright,* 720 F.2d 1221, 1222 n. 3 (11th Cir.1983), *cert. denied,* 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468 (1984), we decline to follow suit.[4] We also need not follow the California Supreme Court's command to California state trial courts that they include their reasons for shackling a defendant in the record, *see People v. Duran,* 16 Cal.3d 282, 545 P.2d 1322, 1328–29, 127 Cal.Rptr. 618, 624–25 (1976) (en banc).[5]

Admittedly, both habeas and direct review are somewhat hampered when the trial judge fails to makes findings. Here, however, the district court ordered an after-the-fact hearing, at which the trial judge, the prosecutor, Jones's trial counsel, and Jones himself testified. Moreover, the judge's testimony reveals that he discussed the shackling issue with petitioner's counsel and the prosecutor in his chambers before the original trial. Thus, Jones's own position was conveyed to the trial judge before the decision to shackle him was ever made. And when the judge gave Jones the choice between leaving the courtroom and being handcuffed to his wheelchair, Jones could have presented any objections he had. He also could have made motions to have the shackles removed during the course of the trial by alerting the trial judge to the particular burdens the physi-

4. Jones also cites to the district court decision in *Spain* for this proposition, but since that disposition was never published, it cannot be relied upon for persuasive authority.

5. The *Duran* opinion appears to be premised on state law, which we do not apply in the instant case. Our task is merely to discern whether shackling Jones violated the federal constitution. *Cf. Wilson,* 770 F.2d at 1485 n. 3. Moreover, even if *Duran* was premised on the California Supreme Court's interpretation of the federal constitution, we obviously would not have to grant deference to this interpretation.

cal restraints imposed on him, as the defendant did in *Spain*.

### III

Under the facts as presented here, handcuffing the petitioner did not deprive him of his constitutional right to a fair trial. The trial judge properly exercised his discretion in ordering that particular security measure and the district court's denial of the petition is

AFFIRMED.