Joseph MORGAN, Petitioner–Appellant,

v.

Bernie AISPURO, Superintendent; Attorney General of the State of California, Respondents–Appellees.

No. 90–56320.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 9, 1991 *.

Decided Oct. 15, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Roger J. Rosen and Ben W. Pesta, Los Angeles, Cal., for petitioner-appellant.

Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Joseph Morgan petitioned for a writ of habeas corpus on the ground that his right to a fair trial was violated by the use of a security courtroom. The district court denied his petition. We have jurisdiction, hold that such a security measure is not inherently prejudicial and affirm.

## I

Morgan was convicted in a California court of murder and conspiracy to commit murder, and was sentenced to life imprisonment on each count. On the day the jury panel was to be sworn in, the state trial court announced its intention to try the case in a security courtroom. The security courtroom had a wire-reinforced glass partition and bars separating the spectator area from the court area.

Morgan's counsel objected to the move and requested a continuance or stay to permit him to seek a writ from the California Court of Appeal. The state court judge denied the motions, but offered counsel the opportunity to have all proceedings take place in the security courtroom. Counsel refused this offer and the jury panel was sworn in and *voir dire* was begun in a non-security courtroom. The following day, jury selection continued in the non-security courtroom. After the afternoon recess, the proceedings were moved to the security courtroom, where the rest of the trial took place. Morgan was not handcuffed or subject to any other restraints in the presence of the jury, nor were there any obstructions between Morgan and his attorney, the witnesses or the trial judge.

Morgan petitioned for a writ of habeas corpus on the grounds that he was denied substantive due process by being tried in the security courtroom and that he was denied procedural due process because there was no formal hearing to determine where the trial should take place. A federal magistrate judge found that there was no due process violation and recommended that the petition be dismissed with prejudice. The district court adopted the magistrate's findings, conclusions and recommendations, and dismissed the petition. Morgan appeals.

## II

We review *de novo* a district court's denial of a writ of habeas corpus, accepting its factual findings unless they are clearly erroneous. *Jones v. Meyer*, 899 F.2d 883, 884 (9th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 95, 112 L.Ed.2d 67 (1990).

The right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, includes the presumption of innocence. *Norris v. Risley*, 918 F.2d 828, 831 (9th Cir.1990). Certain courtroom arrangements may prejudice this presumption. *See, e.g., Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (forcing defendant to wear prison clothes before the jury may affect jurors' judgment); *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (defendant may be prejudiced if he appears before the jury bound and gagged).

Where a petitioner challenges security measures imposed by a state trial court, the task of the federal court considering a habeas petition

> is not to determine whether it might have been feasible for the State to have employed less conspicuous security measures in the courtroom.... All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Holbrook v. Flynn*, 475 U.S. 560, 572, 106 S.Ct. 1340, 1347, 89 L.Ed.2d 525 (1986).

Morgan has made no showing of actual prejudice.[1] We must determine, therefore, whether the use of the security courtroom was inherently prejudicial. This depends on whether "an unacceptable risk [was] presented of impermissible factors coming into play." *Id.* at 570, 106 S.Ct. at 1346–47 (quotation omitted).

We have held that the use of shackles, handcuffs or gags during trial may interfere with a fair trial.[2] *See, e.g., Jones*, 899 F.2d 883; *United States v. Halliburton*, 870 F.2d 557 (9th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 575 (1989). We have never addressed, however, the question whether the use of a security courtroom may have the same effect.

In *Holbrook*, the Supreme Court determined that the presence of additional uniformed state troopers during trial was not "the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial." 475 U.S. at 568–69, 106 S.Ct. at 1345–46. The Court reached this conclusion because the presence of guards could cause a reasonable jury to draw inferences other than that the defendant was "particularly dangerous or culpable." *Id.* at 569, 106 S.Ct. at 1346. For example, the guards could be present "to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence." *Id.* The Court noted that "[o]ur society has become inured to the presence of armed guards in most public places," and concluded that it was "entirely possible that jurors [would] not infer anything at all" from the guards' presence. *Id.*

---

1. The only suggestion of actual prejudice is that during *voir dire*, one venireperson stated that the security barrier reminded her of pictures she had seen during the trial of Charles Manson. There is no indication that this venireperson was a member of the petit jury.

2. In *Jones*, we enumerated a number of ways in which shackling may interfere with the right to a fair trial:

   (1) shackles may reverse the presumption of innocence by causing jury prejudice; (2) shackles may impair the defendant's mental faculties; (3) shackles may impede communication between the defendant and his counsel; (4) shackles may detract from the decorum of the judicial proceeding; (5) shackles may cause pain to the defendant.

   899 F.2d at 885 (citation omitted). The only of these concerns arguably present in this case is the possible effect of the use of the security courtroom on the presumption of innocence.

■ The present case is similar. Security measures other than armed guards are common in government buildings. The security arrangements used here neither restrained Morgan any more than any of the other participants in the trial nor kept him separate from the witnesses, the judge or (presumably) the jury. We hold, therefore, that because there was no reason for the jury to infer that Morgan specifically was the reason for the security measures, the use of the security courtroom was not inherently prejudicial. *See id.* at 571, 106 S.Ct. at 1347 (security measures did not "brand respondent in [jury's] eyes with an unmistakable mark of guilt") (quotation omitted).

Morgan argues that the jury is more likely to be prejudiced if they are aware that the security measures being used are extraordinary. *See Dorman v. United States,* 435 F.2d 385, 397 (D.C.Cir.1970). He argues that because the proceedings began in a normal courtroom and were subsequently moved to the security courtroom, there was an increased likelihood of prejudice.

■ In *Holbrook,* the Supreme Court stated that "[e]ven had the jurors been aware that the deployment of troopers was not common practice in Rhode Island, we cannot believe that the use of the the [*sic*] four troopers tended to brand respondent in their eyes with an unmistakable mark of guilt." 475 U.S. at 571, 106 S.Ct. at 1347 (quotation and citations omitted). The same is the case here. Furthermore, Morgan's counsel refused the opportunity to limit the implication that the security measures were extraordinary by having all proceedings take place in the security courtroom. He cannot now use that decision to create a jury inference of Morgan's guilt. *Cf. Estelle,* 425 U.S. at 512–13, 96 S.Ct. at 1697 (failure to object to being tried in

prison attire sufficient to negate constitutional violation); *Gilmore v. Armontrout,* 861 F.2d 1061, 1071–72 (8th Cir.1988) (failure to object to the use of restraints), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989).

■ Morgan's final argument is that the trial court did not present sufficient reasons for holding the trial in the security courtroom and that the magistrate's findings supporting the need for security were clearly erroneous. The cases cited by Morgan to support the requirement that the trial court enunciate a compelling need for security measures are cases in which the defendant was shackled.[3] In *Holbrook,* the Supreme Court differentiated between the use of shackles and the deployment of security personnel. Because the latter is not inherently prejudicial, the Court held that no essential state interest was required to justify the practice. 475 U.S. at 568–69, 106 S.Ct. at 1345–46. Because we hold that the use of a security courtroom is not inherently prejudicial, the state does not have to justify its decision to try Morgan there.[4] The two-part test we enunciated in *Jones,* 899 F.2d at 885, applies only to inherently prejudicial security measures, such as shackling.

### III

The judgment of the district court dismissing the petition is AFFIRMED.

---

3. In *Jones,* 899 F.2d at 885, we stated that a court must, first, demonstrate compelling circumstances justifying the security measure; and second, assess whether there are less restrictive alternatives. Morgan also cites *Spain v. Rushen,* 883 F.2d 712 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).

4. This conclusion and our previous holding that a state trial judge need not hold a hearing before deciding to require a defendant to be shackled during trial, *Jones,* 899 F.2d at 886, make clear that the trial judge was not required to hold a hearing before moving into the security courtroom.