955 F.2d 47
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arthur Ray HAMBRICK, Petitioner-Appellant,
v.
George DEEDS, et al., Respondents-Appellees.
 No. 90-16704.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 30, 1991.*
Decided Feb. 19, 1992.
 
 Before KILKENNY, SNEED and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Arthur Ray Hambrick, a Nevada state prisoner, appeals pro se the district court's denial of his habeas corpus petition brought pursuant to 28 U.S.C. § 2254. The bulk of appellant's points of error deal with his unsuccessful attempt in his Nevada state trial to have the public defender removed from his case and a substitute counsel appointed at the state's expense. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 3
 Appellant was charged and arraigned for the April 29, 1987 burglary and robbery of a 7-11 store in Las Vegas. He was appointed a public defender, Thomas W. Rigsby. On July 15, 1987, Mr. Rigsby notified the state trial court that one day earlier he had been served notice of a 42 U.S.C. § 1983 civil rights action filed against him in federal court by appellant. In general terms, the § 1983 complaint asserted that Mr. Rigsby was depriving appellant his constitutional rights by not paying adequate attention to the case. The complaint requested, as a form of relief, that the United States District Court cause "another lawyer other than a public defender lawyer like Thomas W. Rigsby" to be appointed to represent him in his state criminal trial.
 
 
 4
 On July 20, the state trial court examined the contents of the civil rights complaint and entertained appellant's request for substitute counsel. Appellant stated that he did not "have an understanding" or "get along" with Mr. Rigsby, and that it was his feeling Mr. Rigsby was not representing appellant to the "best of his ability." The district attorney argued that appellant filed the § 1983 complaint for the sole purpose of creating a conflict that had no basis in fact, and that such a tactic should not be allowed. The court denied the request and ordered Mr. Rigsby to continue representing appellant.
 
 
 5
 Dissatisfied with the court's ruling, appellant renewed his motion for substitute counsel orally on July 27. On July 29, the court again denied appellant's motion. At that time, appellant stated: "I do not want [the public defender's office] to represent me." The court reiterated to appellant that they were representing him, and set trial for August 3.
 
 
 6
 On the day trial was to begin, Mr. Rigsby, the public defender, informed the court that his repeated efforts to prepare for trial with appellant had been "rebuffed," and that appellant now wished to represent himself. Appellant saw the matter somewhat differently. To his thinking, he simply had no choice but to represent himself. Appellant stated:
 
 
 7
 My desire was ... to have Mr. Rigsby dismissed from my case and have a court appointed attorney, but since I have been denied this right ... I have no other alternative but to try and defend my own rights and represent myself.
 
 He continued:
 
 8
 I ... strongly feel[ ] that the public defender, Thomas W. Rigsby, is working with the DA against me in my pending case and on the grounds of this, I feel this should give me enough relief.... [M]e and him have a conflict of interest. I don't have anything against him personally, but I just know in my heart I don't feel right ... going in court with him.
 
 
 9
 The court informed appellant that he had the choice of either accepting Mr. Rigsby's representation or continuing on his own. Appellant chose the latter. The court then thoroughly canvassed appellant pursuant to Faretta v. California, 422 U.S. 806 (1975), covering his age, his experience in court, his understanding of the charge, the potential punishment, as well as his rights generally. The court determined that appellant was able to represent himself and so ruled. Appellant was given access to an investigator at the state's expense and was granted a continuance in order to prepare his defense.
 
 
 10
 Twice more appellant renewed his request for appointment of counsel and relayed to the court his general dissatisfaction with the way things were proceeding. Twice more, August 19 and September 9, 1987, the court denied appellant's request. At the latter date, the time of the final calendar call before trial, the court ordered Mr. Rigsby to serve as standby counsel for appellant, and informed appellant that Mr. Rigsby's services were available.
 
 
 11
 Finally, on September 14, the first day of trial, appellant's displeasure with the proceedings and his predicament grew more intense. He demanded that Mr. Rigsby be removed from the courtroom, and when the court refused, he threatened to disrupt the proceedings. The court warned him that he would be bound and gagged if he disrupted the proceedings, and, if necessary, removed from the courtroom. Appellant continued to threaten disruption, stating that he was not going to participate in the proceedings and that the court might as well remove him at once. As the court began speaking to the prospective jurors, appellant interrupted the court several times. Again, the court warned appellant that it could not tolerate disruptions, and again appellant responded that he would do whatever was necessary to get himself removed from the room. Appellant did just that.
 
 
 12
 First, the court had appellant gagged. Appellant then began tapping counsel table. The court handcuffed him to the chair. Appellant then began kicking counsel table. The court bound his legs to his chair. Appellant then uttered unintelligible noises through the gag and started throwing himself about. At this juncture, the court ordered appellant ungagged, and warned him one final time that he would be removed unless he ceased misbehaving. Appellant stated that he would not, and the court then removed him from the courtroom.
 
 
 13
 Jury selection continued with Mr. Rigsby acting as an amicus on appellant's behalf. Later, appellant agreed not to disrupt the proceedings further, and he was returned to the courtroom for the completion of the jury selection. The jury was examined over their ability to disregard appellant's outbursts and disruptive behavior. Both the state and appellant passed the jury panel for cause, and trial proceeded.
 
 
 14
 The record reflects repeated instances where appellant sought advice from Mr. Rigsby, who continued to act as standby counsel. Appellant was found guilty of burglary and robbery with the use of a deadly weapon.
 
 II.
 STANDARD OF REVIEW
 
 15
 We review de novo the district court's denial of a habeas petition and accept its findings of fact unless they are clearly erroneous. See Jones v. Meyer, 899 F.2d 883, 884 (9th Cir.), cert. denied, 111 S.Ct. 95 (1990). In turn, the Nevada state court's findings of fact are entitled to a presumption of correctness. See Hamilton v. Vasquez, 882 F.2d 1469, 1470-71 (9th Cir.1989). We review de novo whether a trial court's decision to bind and gag a defendant is an abuse of discretion. See Jones, 899 F.2d at 884.
 
 III.
 ISSUES
 A. Ineffective Assistance of Counsel
 
 16
 Appellant first argues that the Nevada trial court denied him his sixth amendment right to effective assistance of counsel by repeatedly denying his motions for appointment of substitute counsel, and then by finding that he knowingly and intelligently waived his right to counsel. Neither point is persuasive.
 
 
 17
 Appellant recognizes, as he must, that he had no constitutional right to counsel of his choosing at the state of Nevada's expense. He nonetheless contends that an irreconcilable conflict arose between him and Mr. Rigsby, and as a result, Mr. Rigsby's effective assistance was impossible. We analyze a motion for substitute counsel in light of three things: (1) whether the motion was timely; (2) whether the trial court's inquiry into the defendant's complaint was adequate; and (3) whether the asserted conflict created a total lack of communication such that the defendant was unable to present an adequate defense. See United States v. Garcia, 924 F.2d 925, 926 (9th Cir.), cert. denied, 111 S.Ct. 2809 (1991).
 
 
 18
 Appellant's motion was timely. He moved for substitute counsel a full two weeks before the initial August 3 trial. However, a timely motion alone is not sufficient reason to justify substitute counsel on sixth amendment grounds. Something more must be shown.
 
 
 19
 Appellant properly attempted to show more. He filed a separate civil rights action against his appointed defender and asserted that Mr. Rigsby was working with the district attorney's office. In addition, he stated that Mr. Rigsby was withholding important information from appellant, and that Mr. Rigsby was not giving the case the attention it deserved. Assertions alone also are not enough. On no less than five separate occasions before his eventual trial, the trial court gave appellant an opportunity to explain and substantiate his position with facts. Indeed, at one point, the court entertained appellant's arguments for some 40 minutes. At no time was appellant able to even allege the slightest factual support for his allegations. It is clear that the trial court made a very patient and adequate inquiry into appellant's claims.[1]
 
 
 20
 The trial court addressed the third prong of the test, viz., whether the asserted conflict created a total lack of communication such that the defendant was unable to present an adequate defense. It stated: "You can't create an illusory conflict of interest by filing suits against the public defender's office." We agree. A defendant may not create a conflict out of whole cloth. He may allege that a conflict exists, and he is entitled to be heard in court and have a judge assess the merits of his claims. This happened in this case, and the merits were lacking. There is nothing in the record that suggests the court's studied refusal to appoint substitute counsel amounted to a violation of appellant's sixth amendment rights.
 
 
 21
 It follows that the appellant was entitled to proceed pro se. The record shows that there was a thorough Faretta interrogation with appropriate responses. We are satisfied that his waiver was "(1) knowing and intelligent, (2) unequivocal, (3) timely, and (4) not for purposes of delay." United States v. Schaff, 948 F.2d 501, 503 (9th Cir.1991). As appellant saw it, he was not given any choice but to proceed pro se because of his dissatisfaction with the public defender. However, the fact that a waiver of counsel is invoked only as an alternative to the appointment of a particular defense attorney at state expense does not make the waiver unknowing or equivocal. See Adams v. Carroll, 875 F.2d 1441, 1442 (9th Cir.1989). Appellant was offered all the sixth amendment protections to which he was entitled, and he received those which he chose.
 
 B. Security Measures
 
 22
 Appellant contends that his constitutional rights were abridged when the trial court had him bound and gagged before the panel of prospective jurors. There is no doubt that security measures such as those employed by the Nevada court are inherently prejudicial. See Holbrook v. Flynn, 475 U.S. 560, 568 (1986). They may interfere with sixth and fourteenth amendment guarantees by reversing the presumption of innocence, impairing the defendant's mental faculties, impeding communication between the defendant and his attorney, and detracting from the decorum of the judicial proceeding. See Morgan v. Aispuro, 946 F.2d 1462, 1464 n. 2 (9th Cir.1991) (citing Jones v. Meyer, 899 F.2d 883, 885 (9th Cir.), cert. denied, 111 S.Ct. 95 (1990)). The potential for harm unquestionably increases where, as here, a defendant is representing himself--security measures physically impede a criminal defendant's ability to conduct his own defense.
 
 
 23
 Nonetheless, there is some point where a state's interest in order for its courtroom proceedings justifies the taking of reasonable, albeit prejudicial, security measures. See Illinois v. Allen, 397 U.S. 337, 343-44 (1970); Stewart v. Corbin, 850 F.2d 492, 497 (9th Cir.1988). That point was reached here. As detailed above, appellant insisted on disrupting the proceedings until it was impossible for the court to continue. Under these circumstances, the security measures employed were justified.[2] The Nevada trial court did not abuse its discretion.
 
 C. Access to Case Preparation Materials
 
 24
 Appellant argues that the court abridged his right to a fair trial by denying his motion for access to the prison law library, witnesses, materials, and telephone. This argument too, fails.
 
 
 25
 The sixth amendment right to self-representation does not include the right to "conduct one's own research at government expense," nor does it imply "further rights to materials, facilities, or investigative or educational resources that might aid in self-representation." United States v. Wilson, 690 F.2d 1267, 1271 (9th Cir.1982), cert. denied, 464 U.S. 867 (1983). "[A] criminal defendant who exercises his right to reject counsel necessarily relinquishes many of the benefits associated with representation by counsel." Id. Nonetheless, due process does require "some access to resources to aid the preparation of his defense." United States v. Robinson, 913 F.2d 712, 717 (9th Cir.1990) (quoting Milton v. Morris, 767 F.2d 1443, 1447 (9th Cir.1985) (Hug, J., concurring)), cert. denied, 111 S.Ct. 1006 (1991).
 
 
 26
 The question is whether the access provided to appellant was sufficient. Here, appellant was afforded 45 minutes of access to the prison law library each day. Moreover, the court appointed an investigator who was ordered to contact witnesses at appellant's direction, and the court gave appellant access to standby counsel. Thus, we hold that appellant had the required "some access" to preparation resources. Accordingly, there was no abridgement of appellant's constitutional right to a fair trial.
 
 D. Independent Review
 
 27
 Finally, appellant contends that the district court erred by not conducting an independent review of the Nevada trial record. Here, the district court delegated the record review task to its magistrate, who in turn issued a report and recommendation. The record reflects that the district court appropriately reviewed the magistrates findings. See Hamilton, 882 F.2d at 1470-71.
 
 
 28
 AFFIRMED.
 
 FERGUSON, Circuit Judge, dissenting:
 
 29
 The majority holds that the Nevada trial court did not abuse its discretion in ordering Hambrick bound and gagged before the panel of jurors. Because I cannot agree, I dissent.
 
 
 30
 As the majority notes, we review de novo whether a trial court's decision to bind and gag a defendant is an abuse of discretion. Jones v. Meyer, 899 F.2d 883, 884 (9th Cir.1990), cert. denied, 111 S.Ct. 95 (1990).
 
 
 31
 At the beginning of the trial, Hambrick asked the court to remove him from the courtroom and threatened to disrupt the proceedings if it did not. The court refused and, when Hambrick interrupted the proceedings with further requests to be removed from the courtroom, ordered him gagged and bound. Only then did Hambrick become violent, throwing himself around in his chair and making noises through his gag. The record reads:
 
 
 32
 THE COURT: The record will show that the jury panel has joined us in the courtroom. This case is the State of Nevada versus Arthur Hambrick, case number C79145.
 
 
 33
 My name is Bob Rose and I'm a district court judge and this case has been assigned to me for trial. You are the jury panel that has been selected in this case that 12 of you will be finally selected to sit as the jury in this matter.
 
 
 34
 The State is represented by Deputy District Attorney Mel Harmon and the defendant, Mr. Hambrick, has chosen to represent--
 
 
 35
 THE DEFENDANT: No, I ain't chose to represent myself.
 
 
 36
 THE BAILIFF: Be quiet.
 
 
 37
 THE COURT: --has chosen to represent himself, and I will explain to you at the outset, Ladies and Gentlemen, how that has occurred.
 
 
 38
 Every person who is accused of a serious crime has the right to be represented by an attorney. If--if a defendant, someone who is accused of a serious crime, has insufficient funds, the public defender's office of Clark County is appointed to represent him. That's a public agency.
 
 
 39
 In this case the public defender's office was appointed to represent Mr. Hambrick, and the attorney that was appointed to represent Mr. Hambrick was Mr. Tom Rigsby who is seated just behind the bailiff; he being from the public defender's office.
 
 
 40
 Mr. Hambrick has stated prior to court during these proceedings that he does not want the public defender's office to represent him--
 
 
 41
 THE DEFENDANT: Because conflict of interest.
 
 
 42
 THE COURT: --that he and the public defender's office have a conflict of interest between the two of them.
 
 
 43
 THE DEFENDANT: I don't care if you take me out.
 
 
 44
 THE COURT: And he has requested that the public defender's office be discharged and a private attorney be appointed to represent him at the public's expense.
 
 
 45
 This Court--this department and other departments have heard Mr. Hambrick's request and claim that there is a conflict of interest several times, and each time his request has been denied; the Courts [sic] finding that the public defender's office is ready and able to represent Mr. Hambrick; that no conflict of interest of any substantial type exists, and that there is no reason to appoint a private attorney for Mr. Hambrick at public expense.
 
 
 46
 Mr. Hambrick, upon receiving those decisions several times, has elected to represent himself--
 
 
 47
 THE DEFENDANT: I ain't elected to do nothing.
 
 
 48
 THE COURT: --rather than the public defender's office.
 
 
 49
 I have directed the public defender and Mr. Tom Rigsby to stand by to assist Mr. Hambrick if requested during the trial. Mr. Tom Rigsby will not participate in any way in this trial other than to assist Mr. Hambrick if he is requested.
 
 
 50
 I'm giving you that explanation up front so you know what has transpired, why Mr. Hambrick is representing himself in these proceedings, and where we are at this stage.
 
 
 51
 THE DEFENDANT: Why don't you explain to them why another judge gave me a court-appointed attorney then if there ain't no conflict of interest.
 
 
 52
 THE COURT: Mr. Hambrick has also been admonished that if he continues to interrupt the Court, appropriate measures will be taken to see that he doesn't interrupt the Court again. He's been also warned about rules of conduct in this proceeding and I am very hopeful that he will abide by them, Mr. Hambrick.
 
 
 53
 THE DEFENDANT: I refuse to abide by them. I am asking you like gentlemen to take me out. You don't want to take me out, so I don't have no other choice but to act the way I'm acting.
 
 
 54
 THE COURT: Is the State ready to proceed?
 
 
 55
 MR. HARMON: Yes, Your Honor.
 
 
 56
 THE COURT: Mr. Hambrick are you ready to proceed?
 
 
 57
 THE DEFENDANT: No, I ain't ready to proceed. I keep asking that man to take me out of the courtroom. Don't want to take me out, so if it's me act like a fool or whatever, that's what going to take; simple as that.
 
 
 58
 I have asked, all due respect, you know, to remove me. You don't want remove me, so I don't have no other choice. You know--
 
 
 59
 THE COURT: Ladies and Gentlemen, for that reason a defendant has the right, if he elects, to representative [sic] himself.
 
 
 60
 THE DEFENDANT: I didn't elect to represent myself. I was forced to represent myself. Yes.
 
 
 61
 THE COURT: And by his refusal--
 
 
 62
 THE DEFENDANT: I'm not no lawyer.
 
 
 63
 THE COURT: --to accept the public defender [sic] office, he has in effect refused to--he has elected to represent himself. And that's the way it is.
 
 
 64
 (Thereupon the defendant's mouth was taped.)
 
 
 65
 THE COURT: We will have this trial with the defendant bound and gagged. The reason I can't remove him because every--
 
 
 66
 (Thereupon the defendant began tapping on counsel table and the defendant's hands were cuffed to defendant's chair.)
 
 
 67
 THE COURT: --every defendant has an absolute right to be present at his trial. And unless his conduct is so outrageous and so disrupts the proceedings, I cannot remove him.
 
 
 68
 And so the defendant has now been bound and gagged because he has interrupted us in the various proceedings--
 
 
 69
 (Thereupon the defendant began kicking counsel table with his leg.)
 
 
 70
 THE COURT: And if he continues to interrupt us and tap on the table, disrupt the order, being the process of the judicial system, he will be eventually removed from this courtroom. It is not my choice, but sometimes the Court is not given a choice by the conduct of a defendant.
 
 
 71
 (Thereupon the defendant's legs were bound to defendant's chair.)
 
 
 72
 Hambrick continued to throw himself around in his chair and make noises through his gag. When the court ungagged him, he reiterated that he wanted to leave the courtroom.
 
 
 73
 The use of physical restraints is inherently prejudicial. See Holbrook v. Flynn, 475 U.S. 560, 568 (1986). Hence, before subjecting a defendant to physical restraints in the jury's presence, a trial court must pursue less restrictive alternatives. Spain v. Rushen, 883 F.2d 712, 721 (9th Cir.1989), cert. denied, 110 S.Ct. 1937 (1990).
 
 
 74
 The Supreme Court has held that "there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant ...: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." Illinois v. Allen, 397 U.S. 337, 343-44 (1970). In Allen, where the defendant repeatedly interrupted the judge with abusive remarks and stated, " 'I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial,' " id. at 340, the Court found that the trial court permissibly removed the defendant from the courtroom and continued the trial in his absence. Id. at 345-46. The Court stated that "no person should be tried while shackled and gagged except as a last resort," and declined to hold "that a defendant cannot under any possible circumstances be deprived of his right to be present at trial." Id. at 344.
 
 
 75
 In the present case, the trial court gagged and bound Hambrick without exploring less restrictive alternatives. Hambrick asked repeatedly to be removed from the courtroom. Under Allen, complying with Hambrick's request would have been permissible and less restrictive than gagging and binding him in the presence of the jury. Moreover, in the present case the trial court not only gagged and bound Hambrick, but also removed him from the courtroom--even after stating, erroneously, that it could not remove him. See id. at 344 (defendant may, under certain circumstances, be removed from courtroom); United States v. Fernandez, 829 F.2d 363, 366 (2d Cir.1987) (defendant may waive right to be present at trial by voluntarily absenting himself); United States v. Muzevsky, 760 F.2d 83, 84 (4th Cir.1985) ("An accused has a constitutional right to be present in the courtroom at every stage of his trial, but he may waive that right.") (citing Diaz v. United States, 223 U.S. 442 (1912)); United States v. Fontanez, 878 F.2d 33, 35 (2d Cir.1989).
 
 
 76
 The state trial court abused its discretion in gagging and binding Hambrick. Because this error was prejudicial, the district court's denial of Hambrick's petition for habeas corpus must be reversed.
 
 
 77
 I dissent.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 These observations also dispose of another of appellant's claims. Appellant argues that the district court erred by not holding an evidentiary hearing into the alleged conflict between appellant and the public defender. However, a habeas petitioner is entitled to an evidentiary hearing only if the particular factual dispute was not resolved in the state trial or it appears that the factual hearing was not full and fair. See 28 U.S.C. § 2254(b); Townsend v. Sain, 372 U.S. 293, 313 (1963). The record shows an adequate inquiry into appellant's conflict allegations at the Nevada trial. The district court did not err by refusing to hold an independent evidentiary hearing
 
 
 [2]
 Moreover, the court endeavored to protect appellant's rights during the time the security measures were in place by having Mr. Rigsby act as standby counsel