12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold Joseph WALDEN, II, Defendant-Appellant.
 No. 93-50048.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1993.
Decided Dec. 1, 1993.
 
 1
 Before: BROWNING, BEEZER, and TROTT, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 * We decide de novo whether a particular courtroom procedure denied defendant a fair trial. United States v. Milner, 962 F.2d 908, 911 (9th Cir.1992); Norris v. Risley, 918 F.2d 828, 830 (9th Cir.1990). Security measures violate a defendant's right to a fair trial if they are inherently prejudicial or cause actual prejudice. Holbrook v. Flynn, 475 U.S. 560, 572 (1986); United States v. Halliburton, 870 F.2d 557, 560 (9th Cir.1989). Walden does not argue the security measures caused actual prejudice. Accordingly, this court must inquire whether those measures were "so inherently prejudicial as to pose an unacceptable threat to [the] right to a fair trial." Holbrook, 475 U.S. at 572; Milner, 962 F.2d at 911.
 
 
 4
 * Walden was not denied a fair trial when the district court ordered U.S. Marshals to escort jurors from the jury room to their cars. Unlike inherently prejudicial practices, a jury escort is open to "a wide[ ] range of inferences." Holbrook, 475 U.S. at 569. The jurors would likely infer the U.S. Marshals escorted them to their cars to protect them from street crime, not from the defendant. Since the jury had "no reason ... to infer that [Walden] specifically was the reason for [the jury escort]," the escort was not inherently prejudicial. Morgan v. Aispuro, 946 F.2d 1462, 1465 (9th Cir.1991).
 
 
 5
 Even if slightly prejudicial, the jury escort was a justifiable response to evidence of witness intimidation. The government presented evidence that witnesses were being followed from the courthouse. The district court could reasonably conclude that jurors would not be immune from such tactics. Holbrook, 475 U.S. at 571 ("slight degree of prejudice" is justified by need for security).
 
 
 6
 The district court adopted adequate curative measures. The marshals were admonished not to discuss the reasons for providing the escort, See Halliburton, 870 F.2d at 561-62 (curative measures included instructing the U.S. Marshals to be discreet), and the Clerk of the Court was instructed to "inform the jurors when they have asked that [the escort] is because of the area in which the Court is located and the length of time that we are going in the evenings." See United States v. Paccione, 949 F.2d 1183, 1192 (2nd Cir.1991) (prejudice caused by juror anonymity was ameliorated by instruction that anonymity was necessary to protect the jury from the media).
 
 
 7
 Walden suggests the escort was particularly prejudicial because it was initiated on the fourth day of trial. The Supreme Court's comment in Holbrook is applicable here: "Even had the jurors been aware that the deployment of troopers was not common practice ..., we cannot believe that the use of the the [sic] four troopers tended to brand respondent in their eyes 'with an unmistakable mark of guilt.' " Holbrook, 475 U.S. at 571 (citation omitted); see also Morgan, 946 F.2d at 1465 (proceedings moved to high security courtroom in middle of trial).
 
 
 8
 The cases cited by Walden in support of his contention that the district court was required to instruct the jury regarding the presumption of innocence when it provided the jury escort are distinguishable--each involved security measures or events that were inherently prejudicial. See Castillo v. Stainer, 983 F.2d 145, 147 (9th Cir.1992), amended, 997 F.2d 669 (1993); Milner, 962 F.2d at 911-12; Jones v. Meyer, 899 F.2d 883 (9th Cir.1990).
 
 B
 
 9
 Other security measures taken by the court--the use of a metal detector outside the courtroom, taking photographs of spectators who entered the courtroom, and providing escorts to witnesses--did not deprive Walden of a fair trial whether considered singly or together. Like the jury escort, these measures did not suggest Walden might be dangerous. See Morgan, 946 F.2d at 1465 (high security courtroom is not prejudicial). Walden presented no evidence the jurors were aware of the security measures, and security measures not known to the jury do not deprive the defendant of the presumption of innocence. See United States v. Ferguson, 758 F.2d 843, 854 (2nd Cir.1985) (holding that "effect on the jurors of the unusual precautions taken here were ... ameliorated because ... the metal-detector was out of the juror's view"); United States v. Jackson, 549 F.2d 517, 527 (8th Cir.1977) (noting that "it is clear that the jury was carefully shielded from contact with or awareness of the security measures"); United States v. Estremera, 531 F.2d 1103, 1113 (2nd Cir.1976) (noting that "it is mere surmise that the metal detectors were visible or caused any prejudice to defendant").
 
 II
 
 10
 The district court's decisions regarding relevance of evidence and the balance between the probative value and prejudicial effect are reviewed for abuse of discretion. United States v. Daly, 974 F.2d 1215, 1216-17 (9th Cir.1992); United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989).
 
 
 11
 * The district did not abuse its discretion in holding evidence that Walden was mistakenly identified as the perpetrator of the offense alleged in the dismissed count was irrelevant to his guilt of the offenses alleged in other counts in the indictment. "This was not evidence that another person had committed the crimes but that some persons, not the witnesses in court, had mistakenly identified [Walden] as the robber in other crimes for which he was not being tried." Jordan v. Ducharme, 983 F.2d 933, 938 (9th Cir.1993).
 
 
 12
 The district court did not abuse its discretion when it ruled evidence of the December 18 robbery was not admissible under the "identity" exception to Rule 404(b). The district court found the December 18 robbery and the other robberies were all generic bank robberies: "If I were to turn on any western movie on television, you'll see the same type of modus operandi present there that you're trying to introduce in this case." This finding is not clearly erroneous. The common characteristic of the robberies--the use of the "take over" technique--is not distinctive or unusual. United States v. Perkins, 937 F.2d 1397, 1400-01 (9th Cir.1991).
 
 
 13
 Assuming the evidence relating to the December 18 robbery was slightly probative of mistaken identity, the district court did not abuse its discretion by excluding it on the ground it would confuse the issues and mislead the jury. Fed.R.Evid. 403. The evidence was at best only remotely relevant, and its introduction would have led to a mini-trial of Walden's role in an uncharged offense. See Perkins, 937 F.2d at 1401 (upholding district court's decision to exclude similar evidence on such grounds); Jordan, 983 F.2d at 938 (same).
 
 B
 
 14
 The district court did not abuse its discretion by admitting the testimony of Sean Williams that shortly after the bank robberies charged in the indictment, Walden carried $15,000 and said he got the money by "hit[ting] a couple of licks," which Williams identified as a slang term that included bank robberies. Walden's statement was a party admission. Fed.R.Evid. 801(d)(2)(A). Although the admission did not conclusively establish Walden committed the bank robberies charged in the indictment, it made it more probable that he had, and was therefore relevant. Fed.R.Evid. 401.
 
 
 15
 The admission of Williams' testimony was not inconsistent with the district court's earlier ruling excluding evidence that Walden was carrying $10,000 when he left Los Angeles for Detroit and that he was unemployed. The court ruled the latter evidence was too speculative: "[T]o argue that they had no job and therefore they had a lot of cash on them, and they therefore must be guilty of a robbery, ... [t]hat's too speculative." Williams' testimony, however, linked the money to crimes that may have included bank robbery and thus was more probative that Walden was the bank robber than evidence of mere possession of the money by itself.
 
 
 16
 Williams' testimony was not evidence of "other crimes," but evidence that Walden committed the crimes charged in the indictment. Fed.R.Evid. 404(b). The district court did not abuse its discretion by concluding that the probative value of Walden's admission outweighed any possible prejudicial effect. Fed.R.Evid. 403. The government introduced a great deal of evidence linking Walden to the bank robberies charged in the indictment. Walden made the admission a few weeks after the last bank robbery and while fleeing Los Angeles after the arrest of his codefendant. Given the evidence of his guilt and the context of the admission, the jury could interpret "hit[ting] a couple of licks" as an admission that Walden robbed the banks as charged, not as an admission that he committed an uncharged crime.
 
 III
 
 17
 The district court did not err when it sentenced Walden to five years imprisonment for one of his convictions under 18 U.S.C. Sec. 924(c) and to twenty years imprisonment for each additional conviction for a total of 65 years. United States v. Deal, --- U.S. ----, 113 S.Ct. 1993 (1993).
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3