28 F.3d 104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James D. BENSON, Petitioner-Appellant,
v.
Charles D. MARSHALL, Warden, Respondent-Appellee.
 No. 93-16520.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 24, 1994.*
Decided June 8, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James D. Benson, a California state prisoner, appeals pro se the district court's denial of his 28 U.S.C. Sec. 2254 petition. Benson was convicted of the murder of a fellow inmate and was sentenced to a term of imprisonment of 37 years to life. He contends the district court erred when it denied his claims that the trial court violated (1) his right to equal protection by sustaining the prosecutor's use of peremptory challenges; (2) his due process and confrontation rights when it instructed the jury not to consider why another person involved in the crime was not also prosecuted or whether that person had been or would be prosecuted; and (3) his constitutional rights when it accepted his admission of his prior convictions without first advising him of the rights he was waiving. We have jurisdiction under 28 U.S.C. Sec. 2253. We accept the district court's factual findings unless clearly erroneous, review its conclusions of law de novo, Jones v. Meyer, 899 F.2d 883, 884 (9th Cir.), cert. denied, 498 U.S. 832 (1990), and affirm.
 
 
 3
 After the trial court granted Benson's first motion for a mistrial based on the prosecutor's exercise of peremptory challenges against African Americans, jury selection began anew and lasted more than one month. Of fifty-eight prospective jurors, eight were African American. Of those eight, two African American males were selected to serve on the jury. Benson objected to the prosecution's peremptory challenges against three African American prospective jurors. After hearing Benson's objections and the prosecutor's explanations, the trial court denied Benson's second mistrial motion.
 
 
 4
 The equal protection clause forbids the exercise of peremptory jury challenges based solely on a juror's race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). A defendant need not show a pattern of discriminatory strikes; the Constitution prohibits striking even a single prospective juror for a racially discriminatory purpose. United States v. Lorenzo, 995 F.2d 1448, 1453-54 (9th Cir.), cert. denied, 114 S.Ct. 225 (1993). After the defendant raises an inference of discrimination, the state is required to provide a race neutral explanation for its challenge.[1] Batson, 476 U.S. at 97. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Hernandez v. New York, 111 S.Ct. 1859, 1866 (1991). The basis for a peremptory challenge can be imprudent so long as it is not a pretext for racial discrimination. See United States v. Bishop, 959 F.2d 820, 826 (9th Cir.1992). The trial court's finding on the ultimate issue of discriminatory intent, turning largely on an assessment of credibility, is a finding of fact presumed correct in habeas proceedings. See Hernandez, 111 S.Ct. at 1868-70.
 
 
 5
 One of the prospective jurors challenged by the prosecutor failed to disclose a prior misdemeanor conviction. After unsuccessfully challenging her for cause, the prosecutor filed a peremptory against her. The defense declined to argue the challenge at trial. Benson argues in his habeas petition that the prosecutor's discriminatory intent is evident because (a) the prosecutor's previous challenge for cause against this same prospective juror had been denied by the trial court and (b) a juror who was selected to serve had a felony conviction for drunk driving and rather than exercising a peremptory against him, the prosecutor made mention of their both being of Italian descent. We reject both of these arguments. The reason offered for a peremptory challenge need not rise to the level of a challenge for cause. See id. at 1868. Benson does not contend that the Italian juror who was selected to serve had failed to disclose his drunk driving conviction to the court.
 
 
 6
 The second prospective juror was unemployed; he had a brother in prison who had been prosecuted by the same district attorney's office which was prosecuting this case; one of his brother's accomplices had been stabbed in prison; and the district attorney believed this stabbing involved the same prison gang as that implicated in this case. Although this prospective juror stated he would not be biased against the prosecution, the prosecution exercised a peremptory against him. When called upon to explain his challenge, the district attorney expressed his concern that were this prospective juror to serve, threats could be made against the brother calculated to influence the verdict. Benson argues in his habeas petition that the prosecutor's discriminatory intent is evident because the prosecutor had no evidence to support his theory that a threat would issue against the juror's brother. We reject Benson's argument that the prosecutor was required to produce evidence of an actual threat before exercising a peremptory against the prospective juror. See id. at 1866 (prosecutor's challenge will be deemed race neutral unless discriminatory intent is inherent in the explanation).
 
 
 7
 The third prospective juror, after misreading the reporting date, appeared for jury duty a month early; she and her two young children lived with her parents; she was unemployed; she could not remember when she had last been employed; she neglected to inform the court on her juror form that she had a brother-in-law in jail; she had visited him in jail but could not remember when; and she was unsure whether she could decide the case based on the evidence. When asked to explain his challenge to this juror, the prosecutor stated that her unemployment and reliance on her parents was not the "profile" for the type of juror which he wanted on this case. In his habeas petition, Benson contends (a) the prosecutor's discriminatory intent is evident because the prosecutor's explanation for his challenge--that the prospective juror was unemployed--was but a pretext for racial discrimination; and (b) the trial court must assess the prosecutor's intent based on the prosecutor's proffered explanation for his challenge, not on the basis of the entire record before it. Unemployment status is not inherently racially based. See id. Nonetheless, Benson is correct that a peremptory would violate Batson were it but a pretext for racial discrimination. See Bishop, 959 F.2d at 826. However, we reject Benson's argument that the trial court must assess the prosecutor's discriminatory intent solely on the basis of the prosecutor's explanation for his challenge. When making its determination on the ultimate issue of intent, the trial court is not obligated to ignore the entire record before it, but to the contrary is charged with assessing the prosecutor's credibility in light of the entire record. This record is more than sufficient to uphold the state court's finding that the prosecutor lacked discriminatory intent when he exercised a peremptory against this prospective juror. See Hernandez, 111 S.Ct. at 1868-70 (state trial court's finding on the ultimate issue of discriminatory intent is accorded a presumption of correctness in federal habeas proceedings).
 
 
 8
 Because Benson has failed to overcome the presumption of correctness accorded the trial court's finding that the prosecutor lacked discriminatory intent as to any of the peremptories filed against these prospective jurors, we affirm the district court's denial of this claim. See id.
 
 
 9
 Benson contends that California Jury Instruction ("CALJIC") 2.11.5 shielded a prosecution witness, Andrew Jones, from the jury's scrutiny for possible bias or self-interest in testifying and thereby violated Benson's due process and confrontation rights. CALJIC 2.11.5 provides:
 
 
 10
 There has been evidence in this case indicating that a person other than defendants was or may have been involved in the crime for which defendants are on trial. You must not discuss or give any consideration as to why the other person is not being prosecuted in this trial, or whether he has been or will be prosecuted.
 
 
 11
 Citing People v. Sheldon, 771 P.2d 1330, 1335 (Cal.1989), Benson argues it was error under state law to give this instruction when the other person involved in the crime testified for the prosecution.
 
 
 12
 The issue in federal habeas proceedings is not whether an instruction violated state law, but whether it violated the federal Constitution. Estelle v. McGuire, 112 S.Ct. 475, 482 (1991). A jury instruction violates the federal Constitution if, considered in the context of the entire trial and the instructions as a whole, it rendered the entire trial fundamentally unfair. Id. An ambiguous jury instruction violates due process if there is a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution. Id.
 
 
 13
 The Sixth Amendment guarantees a criminal defendant the right to be confronted with the witnesses against him. See Maryland v. Craig, 497 U.S. 836, 844 (1990). This includes the right to cross-examine adverse witnesses and the right to show the witnesses' possible bias or self-interest in testifying. Burr v. Sullivan, 618 F.2d 583, 586 (9th Cir.1980).
 
 
 14
 Benson does not claim that he was restricted from cross-examining Jones to demonstrate possible bias or self-interest in testifying or that he was prohibited from arguing such matters to the jury. Consequently, Benson's confrontation rights were not denied. See Burr, 618 F.2d at 586.
 
 
 15
 Benson instead argues that CALJIC 2.11.5 precluded his jurors from discounting Jones's testimony on the grounds that Jones had cut a deal for himself in exchange for testifying for the state. We disagree. CALJIC 2.11.5 did not direct Benson's jurors not to weigh a witness's motivations for testifying. CALJIC 2.11.5 merely directed the jurors to determine Benson's guilt without reference to whether or not other persons involved in the crime would be prosecuted. Benson's jurors were expressly instructed that they could consider the existence of bias, interest or other motive when determining the believability of a witness and they were directed to consider each instruction in light of the others. Considered in the context of the entire charge to the jury, there is no reasonable likelihood that Benson's jurors misapplied CALJIC 2.11.5 so as to preclude consideration of Jones's motivation for testifying. See Estelle, 112 S.Ct. at 482. Consequently, we affirm the district court's denial of this claim.
 
 
 16
 Benson also argues that although his jurors were instructed that corroborating evidence was required before they could accept any testimony of an accomplice, the trial court erred by failing to instruct that Jones was an accomplice as a matter of law. Benson contends this failure was prejudicial because Jones was the only witness who testified that he saw Benson with a knife prior to the murder. The district court did not address this claim and there is some dispute as to whether Benson raised this claim in district court in a timely manner. In any event, we deny the claim because the prosecutor expressly conceded to the jury that Jones was an accomplice and informed the jury that they would need corroborating evidence before accepting Jones's testimony.
 
 
 17
 Benson contends his sentence was improperly enhanced by his prior convictions because the sentencing court failed to warn him of the consequences of admitting his priors and of the rights he was waiving. It is constitutional error for a trial court to accept a defendant's plea without an affirmative showing that it was intelligently and voluntarily made. Boykin v. Alabama, 395 U.S. 238, 242 (1969). The state court of appeal found that although Benson waived his right to jury trial and readily admitted his priors, he was never expressly asked whether he understood that he was also waiving his right to confront witnesses and his Fifth Amendment rights against self-incrimination. So long as the record indicates that a defendant knowingly and voluntarily entered his plea, Boykin does not require that a state court enumerate all of the rights a defendant is waiving before accepting the defendant's plea. See Rodriguez v. Ricketts, 798 F.2d 1250, 1254 (9th Cir.1986), cert. denied, 479 U.S. 1057 (1987). We are satisfied that Benson admitted his priors knowingly and voluntarily. Accordingly, we affirm the district court's denial of this claim. See id.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, appellant's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Once the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. Hernandez v. New York, 111 S.Ct. 1859, 1866 (1991)