**Phillip BASS, Petitioner,**

v.

**Charles SCULLY, Warden, Green-Haven Correctional Facility, Robert Abrams, Attorney General of the State of New York, and District Attorney of White Plains, New York, Respondents.**

No. 82 Civ. 3576 (MEL).

United States District Court, S.D. New York.

Feb. 17, 1983.

William M. Kunstler, Mark B. Gombiner, New York City, for petitioner; Robert H. Gombiner, Brooklyn, N.Y., of counsel.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N.Y., for respondents; Terry Jane Ruderman, Gerald D. Reilly, Asst. Dist. Attys., White Plains, N.Y., of counsel.

---

LASKER, District Judge.

Phillip Bass petitions for a writ of habeas corpus on the grounds that: (1) the trial court's decision to bind and gag him during the voir dire of the jury deprived him of his right to a fair trial; (2) weapons and contraband introduced by the State at trial should have been suppressed as the fruits of an unconstitutional search and seizure; and (3) the eyewitness identification testimony admitted at the trial was tainted by a constitutionally defective show-up and line-up.

Bass was convicted after trial by jury, Hon. John J. Walsh presiding, of robbery and criminal possession of a weapon arising from the armed robbery of a supermarket. The conviction was affirmed by the Appellate Division, Second Department, and leave to appeal to the Court of Appeals was denied.

### (1) *The Gagging and Handcuffing of Bass*

Bass was handcuffed and gagged during the voir dire of the jury after he and his co-defendant, Wally Williams, interrupted the proceedings on several occasions to complain of the inadequacy of their appointed counsel.

The first interruption occurred outside the presence of the jury, at the conclusion of Judge Walsh's oral ruling on the motions to suppress. After counsel noted their objections, Bass stated that he was "being railroaded" and requested permission to speak to the Court. Judge Walsh responded:

> "I will hear you as much as you want to talk to me. But before you do it, I want you to discuss with your attorney what you intend saying. ... I don't want you to say something that is going to prejudice you and hurt you."

(Transcript at 124). The Court then called a recess, after which Bass was permitted to express his concerns that the trial be fair. The Court assured Bass that he would be given a fair trial. (*Id.* at 126–27).

The following day, during the voir dire, Judge Walsh cleared the courtroom of the jurors to allow Bass to make a statement concerning the inadequacy of his counsel. The Court permitted Bass to express his concerns, but denied his application to replace his counsel, explaining that seven days of hearings had already taken place without any request that counsel be replaced, but that if Bass wished to represent himself, his counsel would be directed to remain to assist him. (*Id.* 215–217).

After asking both defendants whether they wished to make any other statements, Judge Walsh left the courtroom to discuss security arrangements with the Deputy because he "felt both defendants were extremely edgy." (*Id.* at 219). Upon his return, he was informed that the defendants had spoken to the prospective jurors, who were still seated in the courtroom, saying that they "were being railroaded and they wanted the jury to know that." (*Id.* at 218–220).

The courtroom was again cleared of jurors, and the defendants were instructed that they could speak to their counsel or to the Court, but that they would not be permitted to "get up and disrupt the proceedings by addressing ... the ... jurors," and that there were means available to the Court to prevent interruptions "such as gagging you." (*Id.* at 221).

The co-defendant, Williams, was then permitted to apply to be relieved of his counsel. Upon the denial of his application, he asked to be excused from the courtroom "because I will disrupt the courtroom when they come back in." (*Id.* at 224). Judge Walsh again warned Williams that he might have to be gagged if he disrupted the case. (*Id.*)

No sooner had the jury been brought back to the courtroom than Bass interrupted, saying: "I can't go on with this here. I don't h̃ave attorneys." (*Id.* at 226). The courtroom was once again cleared of jurors, and the defendants were warned that if any further outbursts occurred, they would be gagged. (*Id.* at 228). The Court then called a recess to allow the defendants to "cool off" and to talk to counsel about the possible sanctions for disruption of the trial. (*Id.*)

After the recess, Williams stated, "If you want to continue with this trial, please handcuff and gag me now. That's the only way I am going to let you go on with this trial." (*Id.* at 229). Judge Walsh replied: "That's up to you, Mr. Williams, but at this stage I am denying your application to gag you and handcuff you." (*Id.* at 230).

The jury was again brought in, and again both defendants spoke out concerning their dissatisfaction with their attorneys. The jurors were sent out of the courtroom, and Judge Walsh asked the defendants, "Unless you are handcuffed and gagged you are going to keep disrupting the jury?" Both responded in the affirmative, and the Court then ordered that they be handcuffed and gagged. (*Id.* at 234).

The jurors were brought in, and instructed that their verdict would depend only on the facts introduced into evidence at the trial. Despite the presence of the gag, Bass again interrupted the proceedings, at which point the Judge cleared the entire courtroom, except for counsel, and instructed counsel to inform their clients that it was possible that he would proceed to trial without the defendants being present. (*Id.* at 238).

After counsel conferred with the defendants, the Court again asked the defendants whether they would commit themselves to refrain from further outbursts. The defendants again refused to cooperate, and the Court brought the jury back in with the defendants still gagged. However, the gags did not prevent Bass from again interrupting the Court in its instructions to the jury. (*Id.* at 243).

Judge Walsh then called a recess after which the defendants were permitted to present their applications to proceed *pro se.* Court was then adjourned for the day. On the following day, the applications to proceed *pro se* were withdrawn, and the trial proceeded without interruption.

Bass argues that the trial judge abused his discretion in ordering him to be gagged and handcuffed because the precipitating incidents were insufficient to warrant such an extreme and prejudicial remedy. More-over, he contends that gagging and binding of a criminal defendant is constitutionally permissible only as a last resort and that the Court did not attempt any alternatives. The State responds that the trial court's decision to bind and handcuff Bass was a constitutionally proper exercise of discretion, fully warranted by Bass' interruptions of the judicial proceedings.

In *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme Court ruled that it is "constitutionally permissible" for a trial judge to handle an "obstreperous defendant" by binding and gagging him. (*Id.* at 343–44, 90 S.Ct. at 1061). However, the Court emphasized that such a technique should be utilized only as "a last resort." *Id.* The considerable disadvantages to the method were discussed by the Court:

"Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with counsel, is greatly reduced when the defendant is in a condition of total physical restraint."

*Id.*

However, the Court noted that trial judges confronted with disruptive defendants must be given "sufficient discretion to meet the circumstances of each case" and that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." The Court concluded that "in some situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here." *Id.*

■ As an initial matter, we reject Bass' characterization of the trial court's actions as "precipitate" (Bass Memorandum at 16) and of his own conduct as "at the worst,

minimal provocation." (*Id.* at 18). The record, which is described at length above, reflects that Bass was warned several times about the possibility that he would be sanctioned for interrupting the proceedings, and that the sanction was imposed only after he told the Court that he would continue to be disruptive unless restrained. Moreover, the Court accorded him several opportunities to express his position directly to the bench, and several times delayed the proceedings to hear the defendants or to allow them to consult with their counsel and "cool off" prior to imposition of the gags. From the record, it appears that Judge Walsh was patient and considerate towards Bass, and conscientiously endeavored to protect his constitutional rights.

It is true, as Bass contends, that his conduct was a far cry from the behavior of the defendant in *Allen,* who threatened to kill the trial judge, or from the defendants in *United States v. Bentvena,* 319 F.2d 916 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963), who threw a chair at the prosecutor and climbed into the jury box to assault the jurors. However, Bass' interruptions were sufficiently serious and continuous to make it impossible for the voir dire to proceed. Judge Walsh was faced with the prospect either of restraining Bass and his co-defendant or adjourning the proceedings indefinitely.

We conclude that, in the circumstances, it was appropriate for the Court to restrain Bass for the purpose of restoring order. The question remains, however, whether the method used violates the *Illinois v. Allen* statement that binding and gagging is a means of "last resort." We think not.

First, we do not believe that the term "last resort" was meant to be taken literally, in the sense that the courts are required to attempt every other conceivable means before binding and gagging. If the words were interpreted literally, binding and gagging would effectively be prohibited, because if the courts were required, for example, to remove defendants from the courtroom *before* resorting to binding and gagging, the disruption could always be resolved by the expedient of removing the defendants, and the need for the "last resort" would never arise.

■ The better interpretation of the Supreme Court's meaning would appear to be that binding and gagging is strenuously discouraged, although, in certain circumstances, it may be the preferable means of restoring order. The circumstances of the instant case are a good example of those in which binding and gagging, as distasteful as it is, was preferable to removing the defendants from the courtroom.

The cause of the disruption was the defendants' dissatisfaction with and distrust of their counsel. If the defendants had been removed from the courtroom, they would not even have had the opportunity to observe counsel's actions. Where a defendant's distrust of his appointed counsel is so great, excluding him from the proceedings would only exacerbate his sense of uneasiness as to his counsel's behavior, and his lack of opportunity to confer with counsel at trial, to instruct him and to be a personal witness to counsel's handling of the case should he wish to pursue his claim of inadequacy of representation.

The conclusion that the trial court made the appropriate decision is bolstered by the fact that it appears to have been an effective decision. That is, after a brief period of being bound and gagged, and after a day's adjournment to consider the matter, the defendants withdrew their applications to proceed *pro se* and conducted themselves without incident throughout the remainder of the trial. The Court did not abuse its discretion in determining that, at least for the short period in question, imposing physical restraints upon the defendants was preferable to excluding them from the proceedings altogether.[1]

---

1. The dilemma which a trial court or reviewing court faces in cases of this kind could be alleviated by one of the following methods: (1) informing the defendant of the available alternatives and allowing him, advised by counsel, to express his own preference as to whether he prefers to be present and gagged or secluded elsewhere; (2) explaining on the record the

Under the circumstances presented, we conclude that the trial court did not abuse its discretion, as accorded under the Constitution, in binding and gagging Bass after his continuous interruptions of the judicial proceedings.

### (2) *The Fourth Amendment Claims*

■ The issues raised by Bass concerning the search and seizure are not amenable to habeas corpus review because a full opportunity has been provided by the State to litigate the claims. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). An evidentiary hearing was held prior to the trial, and Bass does not claim that the hearing suffered from any defects in terms of procedural fairness. His claim, that the trial judge reached the wrong result in refusing to suppress the evidence, is barred by *Stone v. Powell.*

### (3) *The In-Court Identification*

The issue whether Bass was denied his right to a fair trial by the admission of an in-court identification has not been briefed by counsel for the petitioner. Counsel for Bass will be allowed two weeks from the date of this decision to submit a memorandum not to exceed five pages on this claim.

In summary, Bass' claims concerning the gagging and binding and the search and seizure are rejected. Decision is reserved on the claim regarding the in-court identification pending submission of petitioner's memorandum.

It is so ordered.

---

alternatives the court has considered and why the particular means chosen were selected, *see, e.g., United States v. Theriault,* 531 F.2d 281, 285 (5th Cir.), *cert. denied,* 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976) and *Kennedy v. Cardwell,* 487 F.2d 101, 107 (6th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); and (3) using audio and video equipment to allow a defendant who has

been excluded to observe the proceedings. *See United States ex rel. Boothe v. Superintendent,* 506 F.Supp. 1337 (E.D.N.Y.1981), *rev'd on other grounds,* 656 F.2d 27 (2d Cir.1981). Because the question of alternative means has not been exhausted in the state courts, it may not be considered by a federal court in a habeas proceeding. See *Boothe, supra,* 656 F.2d 27.