**Michael James BOOTHE, Petitioner,**

v.

**Robert McLELLAN, Superintendent, Sing Sing Correctional Facility, Respondent.**

**No. CV–91–2328.**

United States District Court, E.D. New York.

April 30, 1992.

Michael James Boothe, petitioner pro se.

Kings County Dist. Atty. by Robin Forshaw, Asst. Dist. Atty., Brooklyn, N.Y., for respondent.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Petitioner, Michael James Boothe, was convicted of Criminal Possession of a Weapon in the Second Degree (N.Y.Penal Law § 265.03) in February, 1985. The Appellate Division affirmed his conviction in August 1990, *People v. James*, 164 A.D.2d 921, 559 N.Y.S.2d 755 (1990), and leave to appeal to the New York Court of Appeals was denied in February, 1991, *People v. James*, 77 N.Y.2d 878, 568 N.Y.S.2d 921, 571 N.E.2d 91 (1991). Boothe was sentenced as a persistent violent felony offender pursuant to N.Y. Penal Law § 70.08 and is currently serving a term of fifteen years to life in prison.

Of the six claims Boothe presents in support of his petition for a writ of habeas corpus, only one merits discussion here. This claim does not arise out of his trial for the above crime, but rather out of a prior conviction that was used to enhance the sentence he is currently serving. Specifically, Boothe alleges that because he was bound and gagged during the jury selection of a 1974 trial for robbery, the ensuing conviction should not have been used to enhance a later sentence. *See Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Such a claim, if valid, would justify a vacatur of the enhanced sentence Boothe received following his 1985 conviction. *See United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

This claim arrives here with a long and scrutinized history, triggered by events that occurred during the jury selection of Boothe's 1974 trial for robbing a Brooklyn grocery store and assaulting its owner and his employee. During those proceedings, Boothe, although represented by counsel, personally objected to the prosecutor's use of peremptory challenges. Justice Kern, the trial judge, instructed him to remain silent, but almost immediately, Boothe began to object to a court officer standing behind him. Justice Kern then called a side bar to tell Boothe and his attorney that he would not permit the trial to "degenerate into a three-ring circus" and that, unless Boothe agreed to behave, he would consider invoking one of the techniques outlined in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) for dealing with unruly defendants. Justice

Kern also advised the jury panel to disregard Boothe's conduct and to draw no adverse inference from it.

Before the proceedings could recommence, however, Boothe demanded to see a psychiatrist. At this point, the judge excused the jury panel and reiterated his intention to employ one of the *Allen* approved methods—specifically binding and gagging—if Boothe remained disruptive. Justice Kern asked Boothe for assurance that he would behave when the jury was readmitted. When he refused to give such assurance, Justice Kern extended the recess to investigate whether the courthouse was equipped with equipment with which Boothe could listen to his trial from outside the courtroom.

Upon learning that the courthouse did not have such equipment, the judge again attempted to proceed with the voir dire. This proved impossible, however, for he soon learned that during the recess Boothe had threatened to kill anyone who tried to touch him. The judge gave Boothe a final warning that any future outbursts would result in him being bound and gagged. When he then accused the judge of "forcing [him] to trial with a man that's not representing [him]," Justice Kern excused the jury and ordered him handcuffed and gagged. Before the jurors were recalled, Boothe rejected yet another opportunity to agree to behave and be released from the shackles.

Justice Kern attempted to give the jurors additional limiting instructions when they returned, but was repeatedly interrupted by Boothe who remained provocative despite the physical restraints. Managing stifled comments through the gag, he called the judge a liar, criticized his lawyer and pushed the counsel table at which he was seated forward with his feet. He remained bound and gagged until the jury was empaneled and opening statements were about to begin. At this point, Boothe agreed to behave, the shackles and gag

were removed and the rest of the proceedings passed without incident. Boothe was found guilty of robbery, assault, grand larceny and possession of a weapon. The Appellate Division affirmed his conviction, *People v. Boothe*, 56 A.D.2d 657, 392 N.Y.S.2d 47 (1977), and leave to appeal to the Court of Appeals was denied.

Boothe's petition for a writ of habeas corpus, however, met with success. Concluding that the trial judge's discretion in deciding whether to bind and gag the petitioner was "impermissibly frustrated by the state's refusal to supply the necessary equipment," *United States ex. rel. Boothe v. Superintendent*, 506 F.Supp. 1337, 1345 (E.D.N.Y.1981), Judge Weinstein held that the 1974 conviction violated due process. Although Boothe did not specifically raise this issue, Judge Weinstein found it to be "implicit" in Boothe's four other claims. *Boothe v. Superintendent*, 656 F.2d 27, 29 (2d Cir.1981). The Court of Appeals for the Second Circuit, however, reversed on procedural grounds, finding that Boothe had not "fairly presented" his due process claim to the state courts, and therefore had not exhausted his state remedies. *Id.* at 31.[1]

Boothe has now served the full sentence that was imposed for the 1974 conviction and is no longer "in custody" with respect to that sentence. *See Maleng v. Cook*, 490 U.S. 488, 492, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989). Because the 1974 sentence was used as a predicate for enhancing the 1985 sentence for which Boothe is now in custody, he may challenge the prior conviction on the ground that Judge Weinstein first raised on his behalf. *See id.* at 492–93, 109 S.Ct. at 1926; *Crank v. Duckworth*, 905 F.2d 1090 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Gamble v. Parsons*, 898 F.2d 117 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 212, 112 L.Ed.2d 172 (1990); *Feldman v. Perrill*, 902 F.2d 1445 (9th Cir.1990). This claim

---

1. In a second opinion, the Court of Appeals reached the same conclusion under the more liberal exhaustion standard later established in *Daye v. Attorney General of New York*, 696 F.2d

186 (2d Cir.1982) (en banc). *See United States ex. rel. Boothe v. Superintendent*, 838 F.2d 1202 (2d Cir. filed Dec. 3, 1987).

was raised in Boothe's appeal to the Appellate Division from his 1985 conviction, *see People v. James*, 164 A.D.2d 921, 559 N.Y.S.2d 755 (1990), and in his application for leave to appeal to the Court of Appeals, *see People v. James*, 77 N.Y.2d 878, 568 N.Y.S.2d 921, 571 N.E.2d 91 (1991). Thus, while Boothe never exhausted his state remedies with respect to the claim raised by Judge Weinstein following his 1974 conviction, he has done so with respect to the enhanced sentence he is now serving, and may raise the claim in support of a writ of habeas corpus. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir.1979); *Daye v. Attorney General of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982) (en banc).

### Discussion

■ In *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme Court held that it was not unconstitutional *per se* for a trial judge to handcuff and gag a defendant at trial. *Id.* at 343–44, 90 S.Ct. at 1061. Rather, the Court recognized that a trial judge must retain "sufficient discretion" to make such a decision if, after being warned of the possible consequences of his actions, the defendant continues to "[conduct] himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* at 343, 90 S.Ct. at 1060–61. When the defendant agrees to behave, he may immediately reclaim his right to appear before the jury free of restraints. *Id.*

Because of its concern that shackling could unduly prejudice the defendant, as well as interfere with his right to counsel, the Supreme Court concluded that "no person should be tried while shackled and gagged except as a last resort." *Id.* at 344, 90 S.Ct. at 1061. From this language, courts have read an additional calculation into the shackling decision. It is now widely recognized that trial judges must consider whether a technique less prejudicial than shackling would accomplish the same result. *See Woodard v. Perrin*, 692 F.2d 220, 221 (1st Cir.1982); *Elledge v. Dugger*,

823 F.2d 1439, 1451 (11th Cir.), modified and reh'g denied, 833 F.2d 250 (11th Cir. 1987), *cert. denied*, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988); *Kennedy v. Cardwell*, 487 F.2d 101, 111 (6th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); *Jones v. Meyer*, 899 F.2d 883, 885 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 95, 112 L.Ed.2d 67 (1990).

The decision to shackle a defendant is subject to "close judicial scrutiny," *Elledge*, 823 F.2d at 1451 (quoting *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)), but is reversible only for an abuse of discretion by the trial judge. *Jones*, 899 F.2d at 884; *Kennedy*, 487 F.2d at 110. The petitioner does not allege such abuse here. Indeed, Judge Lasker's thoughtful opinion in *Bass v. Scully*, 556 F.Supp. 778 (S.D.N.Y.1983), a factually similar case, suggests that such an argument would not succeed.

In *Bass*, the defendant was bound and gagged during voir dire after he and his co-defendant had continually interrupted those proceedings. The trial judge had been forced to excuse the prospective jurors at least four times in order to reprimand and respond to the defendants. *See id.* at 779–80. After instructing them to remain silent and warning them that he would invoke *Allen* procedures if necessary, the judge ordered both defendants bound and gagged. *Id.* Judge Lasker denied Bass's petition for a writ of habeas corpus on due process grounds, noting that:

> ... Bass' interruptions were sufficiently serious and continuous to make it impossible for the voir dire to proceed. Judge Walsh was faced with the prospect either of restraining Bass and his co-defendant or adjourning the proceedings indefinitely. We conclude that, in the circumstances, it was appropriate for the Court to restrain Bass for the purpose of restoring order.

*Id.* at 781. *See also Williams v. LeFevre*, 551 F.Supp. 1000 (S.D.N.Y.1982).

Petitioner's misconduct here, as in *Bass*, was "sufficiently serious and continuous to make it impossible for the voir dire to proceed." In fact, the record indicates that Boothe may have been more intimidating and disruptive than Bass. He was verbally and physically threatening numerous times and continually ignored requests to remain silent, as well as warnings that he would be bound and gagged if he refused to behave. Indeed, Judge Weinstein assumed "[a]rguendo the trial court would not have abused its discretion had it decided that the proper way to handle the emergency created by defendant's conduct was to do what he in fact did." *Boothe*, 506 F.Supp. at 1344.

The focus of this petition, however, is not whether Justice Kern abused his discretion. Rather, the argument petitioner presses, as Judge Weinstein originally phrased it, is that "[t]he state, by failing to provide proper facilities, denied the court the opportunity to fulfill its constitutional duty of protecting defendant's rights." *Id.* While I have great respect for my colleague, his formulation of the issue overlooks the fact that petitioner disrupted his own trial and that his contumacious behavior continued after being advised repeatedly by the trial judge that he would be shackled if he did not desist. Under these circumstances, the threshold issue is whether petitioner should even be able to challenge his conviction here on the ground that New York State failed to provide a facility to which he could be ejected where he could watch his trial on closed circuit television.

Such a challenge is particularly difficult to reconcile with the equitable nature of the writ of habeas corpus, and the principle applicable to such proceedings, that a petitioner's "conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Fay v. Noia*, 372 U.S. 391, 438, 83

S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). *See also Kuhlmann v. Wilson*, 477 U.S. 436, 447, 106 S.Ct. 2616, 2624, 91 L.Ed.2d 364 (1986). Even if New York State was derelict in failing to provide a facility of the kind Judge Weinstein described, this principle should arguably disentitle a defendant who creates havoc at his own trial from asserting the resulting prejudice as a basis for habeas corpus relief.[2] While the result would be otherwise if such a defendant could demonstrate that the denial of relief would result in a fundamental miscarriage of justice,[3] petitioner cannot make such a showing here. Setting aside the numerous instructions to the jury that Boothe's conduct or the shackling should not "prejudice" him or "be held against him for one single solitary second," the proof of petitioner's guilt was so overwhelming as to render harmless the defect of which he now complains. Indeed, this consideration alone justifies the denial of the petition without the necessity of resolving the issue of whether Boothe's conduct should disentitle him to relief or require a greater showing of prejudice than would otherwise be required.

■ Where a constitutional error relates to a rule that seeks to ensure the "truth-furthering" function of a trial, harmless error analysis is particularly appropriate. In such instances, the underlying purpose of the rule will not be compromised if the record as a whole provides overwhelming support for the jury's finding of guilt. *See* Tom Stacy & Kim Dayton, *Rethinking Harmless Constitutional Error*, 88 Colum.L.Rev. 79, 92 (1988). Indeed, the Supreme Court itself has recognized that the "common thread" connecting its harmless error cases is that "each involved 'trial error'—error which occurred during the presentation of the case to the

---

**2.** The discretion to deny habeas corpus relief with respect to the issue raised first by Judge Weinstein derives from the equitable nature of the writ and is "implicit in the statutory command that the judge ... 'dispose of the matter as law and justice require.' 28 U.S.C. § 2243," *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); *Stone v. Powell*, 428 U.S.

465, 478 n. 11, 96 S.Ct. 3037, 3044 n. 11, 49 L.Ed.2d 1067 (1976).

**3.** *Cf. Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (court may grant habeas relief in absence of showing of cause and prejudice for procedural default by petitioner if fundamental miscarriage of justice would otherwise occur).

jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). Here, the petitioner has alleged that, by appearing before the jury in shackles and a gag, a specter of guilt was impermissibly raised. His objection is, in essence, to the admission of non-relevant, prejudicial evidence. Because such an objection pertains directly to a "trial error," it is suited to a harmless error analysis.[4]

The evidence surrounding the robbery of the grocery store and the assault of its owner, Joseph Silverstone, came in through the testimony of Mr. Silverstone and three other witnesses. Silverstone, who identified Boothe at trial, testified that he had a clear view of Boothe in his store and that he identified him only minutes later after Boothe was arrested. Officer Castagliola, the arresting officer, testified that he followed Boothe in his car as he ran from the store, and that upon stopping him at gun point, Boothe dropped a wallet that was later identified as belonging to Silverstone. Castagliola further testified that he drove Boothe without handcuffs, but at gunpoint, to Silverstone's store where the latter identified him. Castagliola also testified that a full search of Boothe at the police station revealed a set of keys later identified as belonging to Silverstone. A second police officer, Anthony Avena, testified that he transported Boothe to the police station and later found $315 in the back seat where Boothe had sat. Boothe told Avena that some of this money belonged to him.

Against the explicit advise of his lawyer, Boothe insisted upon taking the stand. He testified that at the time of the robbery, he was playing basketball in a schoolyard and saw three or four men run by followed by a police officer. He further testified that when the officer lost sight of these men, he turned to Boothe, put a gun to his head and arrested him. This testimony was completely different from the equally implausible post-arrest story Boothe gave the police. At that time, he said that he had been standing in front of Silverstone's store when three of his friends—whose names he didn't know—ran out of the store and threw some keys, loose money and a wallet onto the pavement. Boothe told Officer Castagliola that he then picked up these items and ran after his friends in an effort to return this property to them.

The standard for determining whether an error or defect of the kind at issue here is harmless is whether, without regard to the error and looking to the record as a whole, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. *See United States v. Hasting,* 461 U.S. 499, 509–12, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The record here leaves no room to doubt that the jury's verdict was supported by overwhelming evidence that unequivocally established Boothe's guilt and that he would have been convicted even if he had not been shackled during jury selection. *See Pinkney v. Keane,* 737 F.Supp. 187, 198 (E.D.N.Y.), *aff'd,* 920 F.2d 1090 (2d Cir.1990), *cert denied,* —— U.S. ——, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991).

**4.** The fact that evidence of the kind at issue here may be "inherently prejudicial," *Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 1345–46, 89 L.Ed.2d 525 (1986), does not invariably preclude a contrary conclusion. Indeed, in *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Supreme Court recognized that wearing prison garb in front of the jury was "so likely to be a continuing influence throughout the trial that ... an unacceptable risk is presented of impermissible factors coming into play," *id.* at 505, 96 S.Ct. at 1693, but it cited with approval the application by lower courts of a harmless error standard to this type of constitutional defect. *See id.* at 506–07, 96 S.Ct. at 1694. The Supreme Court went on to hold that absent an objection by the defendant to wearing prison clothes, the resulting prejudice was insufficient to justify reversal of the conviction. *See id.* at 512–13, 96 S.Ct. at 1697.

## Conclusion

Accordingly, for the foregoing reasons, the petition for a writ of habeas corpus is denied.

SO ORDERED.