**Carmelita F. DOSS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**James Leroy DOSS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 24944, 24945.**

United States Court of Appeals, Ninth Circuit.

Sept. 8, 1970.

Rehearing Denied in No. 24945 Sept. 30, 1970.

Harvey A. Schneider (argued), Pasadena, Cal., Byron & Warner, Los Angeles, Cal., Hollopeter, Terry & Schneider, Pasadena, Cal., for appellants.

John W. Hornbeck (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and TAYLOR,* District Judge.

KOELSCH, Circuit Judge.

James Doss and Carmelita, his wife, appeal from judgments entered on verdicts finding James guilty of bank robbery (18 U.S.C. § 2113(a) (d) and Carmelita guilty of assisting James in said robbery as an accessory after the fact (18 U.S.C. § 3).

We will discuss the asserted errors seriatim.

*First,* that the district judge denied defendants' motion to dismiss the indictment on the ground that it was based solely upon hearsay. We disagree. Jack v. United States, 409 F.2d 522 (9th Cir. 1969); Wood v. United States, 405 F.2d 423 (9th Cir. 1968), cert. den. 395 U.S. 912, 89 S.Ct. 1756, 23 L.Ed.2d 224, and Johnson v. United States, 404 F.2d

1069 (9th Cir. 1968), cert. den. 395 U.S. 912, 89 S.Ct. 1761, 23 L.Ed.2d 224.

*Second,* that the district judge denied defendants' motions to suppress and overruled their objections to identification testimony by witnesses Meija and Mang. Defendants urge error in three separate respects.

(a) The compelled appearances.

After defendants had been released on bail, the judge made an order compelling them to appear at police lineups. Their attorney was present throughout the proceedings.

Defendants argue that the district judge lacked power to order their appearance and hence (to quote James) "the identification obtained at the lineup from the eye-witnesses should have been suppressed."

■ We think defendants' premise is unsound and hence reject their conclusion. The Supreme Court has squarely held that mere compulsion to appear in a pretrial lineup does not *per se* violate any constitutional right against self-incrimination. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). And this court recently noted that "The identification of a person who has committed a crime is of first rate importance to the public. To deprive the prosecution of this potential evidence by refusal to expose one's self to observers who saw the person who committed the crime is a suppression of important evidence and a frustration of the effort to learn the truth." United States v. Parhms, 424 F.2d 152 (9th Cir. 1970).

■ ■ Thus, since a lineup is not constitutionally impermissible and, since the use of a lineup is a well recognized and valuable aid in the administration of justice, we believe a district court possesses the inherent power to compel participation by an accused. See United States v. Doe, 405 F.2d 436 (2d Cir. 1968); (semble) United States v. Rudy, 429 F.2d 993 (9th Cir. Aug. 14, 1970).

(b) Right to counsel at the lineups.

■ Defendants, although conceding the lineups were not unfairly conducted and that their attorneys were in attendance, assert that neither counsel was permitted to listen in on any remarks that may have passed between the spectators—particularly the witnesses and the officers, both during the proceeding and immediately afterward. Relying upon Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), they strenuously argue that the Sixth Amendment guarantee of counsel includes this latter right.

We wholly disagree.

The rationale and decision in *Wade* is epitomized in the following quotation:

> "Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup which may not be capable of reconstruction at trial and since the presence of counsel itself can often avert prejudice and assure meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid' [of counsel]—as at the trial itself." (p. 237, 87 S.Ct. at p. 1937)

■ The grave "potential for prejudice," of course refers to the likelihood of a mistaken identification of a suspect in a lineup, and as the Court carefully pointed out, the probability of such an error in judgment is most often due to "the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for identification." Significantly the Court noted that cross-examination at the trial often affords an adequate means to protect the accused but that a witness at a lineup can be subjected to subtle influences of which he may not be aware—for example, the composition of the lineup, distinctive dress of the suspect, etc. Cross-examination might very well not suffice to disclose such covert improprieties as those mentioned in *Wade,* but we do not believe that the ordinary wit-

ness is so unlikely to be schooled in the detection of influences, consisting of verbal suggestions, that he could not recall them on cross-examination. In sum, we conclude that *Wade* does not support appellant, that the ordinary witness is capable of recalling and recounting conversations concerning the identity of a suspect and that the prosecution need not, in effect, permit defense counsel to "sit in" on conferences with prospective witnesses.

### (c) Due process.

■ James urges that the lineup witness's identification testimony should have been suppressed on due process grounds. He asserts that "prior to" the lineup a collection of photographs, his included, was shown witnesses Mejia and Mang, but at the lineup the participants, except for him, were not the same ones pictured in the photographs. Appellant, relying upon Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) contends that this pre-lineup display of photographs, coupled with the composition of the lineup, in effect singled him out from all others and probably created in the witnesses' minds a firm belief that he was the guilty party; he concludes (to borrow the phrase in *Stovall*) that as a result "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." (p. 302, 87 S.Ct. at p. 1972)

Appellants, as noted earlier, make no attack on the lineup itself; neither do they urge anything "impermissibly suggestive" in or about the showing of the photographs to the witnesses—that being the test commonly applied to photographic [Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)], as well as to lineup identifications. Stovall v. Denno, *supra;* United States v. Wade, *supra.* Try as we might, we cannot conclude that the whole exceeds the sum of the parts. In short, we are satisfied that on this record James' conclusion is unwarranted.

*Third,* the alibi rebuttal.

The District Attorney, to rebut alibi evidence that Carmelita was at a doctor's office with her infant child when the crimes were allegedly committed, called Dauphine Tiller to the stand. Mrs. Tiller had previously made a signed statement that it was she, not Carmelita, who had taken the child to the doctor on the day in question. However, upon being questioned, Mrs. Tiller testified in substance that she had been mistaken about the date. Thereupon, the District Attorney, claiming surprise, confronted her with the statement; at that point defense counsel objected and the jury was excused; during the ensuing discussion, the judge ruled that he would not admit the written statement but would allow the District Attorney to refer to it in framing questions to Mrs. Tiller. The jury was then recalled and the examination of Mrs. Tiller proceeded in accordance with the ruling.

The District Attorney now insists that the evidence was admissible both for impeachment and as substantive proof. We disagree on both counts and hold the ruling error.

■ 1. During the colloquy, the District Attorney acknowledged that, before calling Mrs. Tiller, she had told him that her statement was untrue; yet he nevertheless persisted in an effort to get its contents before the jury. As we recently reiterated in Bushaw v. United States, 353 F.2d 477, 481 (9th Cir. 1965), cert. den. 384 U.S. 921, 86 S.Ct. 1371, 16 L.Ed.2d 441, "A party 'is not permitted to get before the jury, under the guise of impeachment, an ex parte statement of [a] witness, by calling him to the stand when there is good reason to believe he will decline to testify as desired, and when in fact he only so declines.' Kuhn v. United States, 9th Cir. 1928, 24 F.2d 910, 913."

■ 2. Neither were the prior inconsistent statements admissible as substantive evidence. Benson v. United States, 402 F.2d 576 (9th Cir. 1968). California v. Green, 399 U.S. 149, 90

S.Ct. 1930, 26 L.Ed.2d 489, June 23, 1970, relied upon by the appellee, is not to the contrary; it merely holds that a California statute which makes admissible generally a witness's prior inconsistent statements does not violate the accused's constitutional right of confrontation. However, since the proof of Carmelita's guilt, wholly aside from Mrs. Tiller's testimony, was virtually conclusive, we conclude the error was harmless.

James raises several additional points in a supplemental brief. None has merit.[1]

Finding no reversible error, the judgments are affirmed.

---

1. Having made no objection to the introduction of evidence tending to impeach the witness Massingale, defendants laid no foundation for the late motion to declare a mistrial. Moreover, it is at least doubtful that the evidence was inadmissible.