**Leland A. JORDAN, Petitioner–Appellant,**

v.

**Kenneth DUCHARME, Respondent–Appellee.**

No. 89–35655.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided Jan. 11, 1993.

Sheryl Gordon McCloud, Seattle, WA, for petitioner-appellant.

Paul D. Weisser, Asst. Atty. Gen., Olympia, WA, for respondent-appellee.

Before: WRIGHT, HUG and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The main issue we must decide in this case is whether the exclusion of an attorney from the witness preparation stage of a pretrial lineup violated the Sixth Amendment right to counsel. We find any constitutional error harmless and affirm the district court's denial of Leland Jordan's habeas corpus petition.

## I.

Responding to a radio broadcast about a wallet theft in the area and a description of the suspects, Seattle police stopped the car Jordan was driving. They found the stolen wallet in the passenger compartment, together with a knife and silver pistol. They arrested Jordan. A few weeks earlier, a series of armed robberies had occurred at several cash machines, gas stations and fast food restaurants throughout the city. Because he was not yet a suspect in these crimes, Jordan was eventually released. But, in the end, the investigation again led to Jordan and he was rearrested and charged with one count of robbery.

The police arranged a comprehensive lineup, calling 33 witnesses involved in 11 separate incidents. Of these witnesses, 11 identified three different suspects, including Jordan. In the final amended information, the state charged Jordan with six counts of first degree robbery and one count of attempted first degree robbery. The state later dropped two counts relating to robberies on July 29 and July 31 after Jordan produced evidence that he had been in a Spokane hospital on those days. The trial proceeded on the remaining counts. Nine witnesses had been present at the lineup regarding these charges and four made identifications, all of Jordan.

On the day of the lineup, a police sergeant ordered the public defender, Janet Ainsworth, out of the witness preparation room. Ainsworth was gone for about ten minutes but observed the rest of the lineup procedure after the witnesses were given preliminary instructions. Upon her return she did not notice anything unduly suggestive.

The police sergeant who removed her could not provide a strong justification for his actions. He testified that there was "[n]o particular reason.... On this particular occasion an attorney surprised me by sneaking into the room, is what I felt was going on. And I didn't appreciate it so I asked the attorney to leave."

During the brief time Ainsworth was excluded, Sergeant Scheuffele read aloud to the witnesses from a standardized instruction sheet. He also made additional comments "that we would not send the wrong man to jail if they inadvertently picked the wrong man, that this was not the only evidence in the case but that I wished for them to do the very best they could."

The trial court denied motions to suppress the identifications and to admit expert testimony from Dr. Elizabeth Loftus, professor of psychology at the University of Washington, regarding the reliability of eyewitness identifications. In addition, the court excluded any mention of the fact that two counts of robbery had been dismissed and that other witnesses had misidentified Jordan regarding those crimes.

Jordan was convicted of one count of attempted first degree robbery and three counts of first degree robbery. He exhausted his state court remedies, *see State v. Jordan,* 39 Wash.App. 530, 694 P.2d 47 (1985), *review denied,* 106 Wash.2d 1011 (1986), *cert. denied,* 479 U.S. 1039, 107 S.Ct. 895, 93 L.Ed.2d 847 (1987), and filed a habeas corpus petition, and later an amended petition, with the district court. Adopting the Report and Recommendations of Magistrate Judge Sweigert, the court denied the petition on summary judgment.

Jordan's first argument on appeal is that the removal of the public defender while witnesses received preliminary instructions violated his right to counsel. He also contends that the state court improperly excluded evidence of the mistaken selections and improperly excluded the proposed expert testimony on eyewitness identification.

## II.

We review de novo the district court's denial of the habeas corpus petition. *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991). Preliminarily, we must decide whether to reach the merits of Jordan's Sixth Amendment claim. The state asserts that requiring the presence of counsel during prelineup instructions would result in a "new rule" of constitutional procedure. Even if we were to decide the issue in Jordan's favor, says the state, the ruling could not benefit him because a new rule

may not be applied on collateral review. *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A rule is new if it was not "dictated" by precedent, and was "susceptible to debate among reasonable minds." *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990).

■ Yet the state failed to raise the *Teague* defense before the district court. We have discretion to find the defense waived and, accordingly, we will not entertain the state's new rule argument. *See Boardman v. Estelle*, 957 F.2d 1523, 1537 (9th Cir.1992) ("new rule" defense waived because of failure to raise it until petition for rehearing), *cert. denied,* — U.S. —, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992).

Jordan's Sixth Amendment claim presents an issue of first impression. A suspect is guaranteed the right to counsel at a post-indictment l' .up. But this case requires us to consider when a lineup begins, whether at the instruction phase or at the moment of observation between witness and suspect.

In the landmark trilogy of Supreme Court cases, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court held that a post-indictment lineup was a "critical stage" in a criminal proceeding that constituted a trial-like "confrontation" requiring the assistance of counsel. Although these cases clearly established the Sixth Amendment right to counsel at lineups, the Court did not expressly define counsel's role or what constitutes the "lineup."

Jordan relies on more general discussion in *Wade* that counsel is required at lineups to avert the grave potential for prejudice and to assure the suspect's right to a meaningful confrontation at trial, 388 U.S. 218, 235–37, 87 S.Ct. 1926, 1936–38, to argue that the witness preparation stage triggers the right to counsel. He asserts that the instruction phase and the actual moment of observation during a lineup raise the same Sixth Amendment concerns. Both present

the risk of unintentional suggestions that are incapable of reconstruction at trial.

Despite *Wade*'s suggestion that attorneys have an active and extensive pretrial role in guarding against mistaken eyewitness testimony, later cases have considerably narrowed the scope of the Sixth Amendment right to counsel. The Court made this clear in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). In holding that the right to counsel does not attach to post-indictment photographic displays, the Court instructed that "lack of scientific precision and inability to reconstruct an event are not tests for requiring counsel in the first instance." *Id.* at 316, 93 S.Ct. at 2577. Any pretrial event requiring the presence of counsel should be a critical stage, analogous to a trial, where the accused may be overpowered by his professional adversary. The threshold analysis is whether "the trial itself can provide no substitute for counsel if a pretrial confrontation is conducted in the absence of counsel." *Id.* Because a photo identification witness could still be effectively cross-examined, the *Ash* court found a counsel guarantee before trial unnecessary.

Similarly, we have held that witness interviews *after* the lineup do not trigger the right to counsel because cross-examination at trial can disclose any improprieties that occurred. *Doss v. United States*, 431 F.2d 601, 603 (9th Cir.1970). In *Doss*, we distinguished the subtle, highly suggestive visual influences that can adversely affect a lineup from verbal cues that might occur during the proceeding and immediately thereafter. We concluded that counsel's presence was not required at post lineup interviews because any improper verbal suggestions could be readily detected by witnesses and explored on cross-examination. *Id.* at 603–04.

The parties disagree whether *Doss* and similar post lineup interview cases are controlling on the issue before us. The state relies heavily upon the distinction between verbal/nonverbal cues, arguing that Jordan's later trial substituted for the absence of counsel during the witness preparation

stage. Any improper verbal comments during the preliminary instructions were amenable to discovery on cross-examination. Jordan suggests *Doss* is distinguishable because there we wished to prevent lawyers from interfering with government witness interviews under the guise of the right to counsel, *see id.* at 604, a concern inapplicable to situations where the police are merely instructing witnesses. Furthermore, Jordan argues that *after* the lineup, once a witness already has a decision in mind, less danger of improper influence exists.

■ Although *Doss* involved post lineup conduct, we agree with its general reasoning. To determine whether a pretrial event implicates the right to counsel, a court must consider whether cross-examination can reveal any improper procedures that occur in counsel's absence. This evaluation requires some analysis of the likelihood that witnesses will be able to detect adverse influences. *Id.* We recognize that cross-examination may not be an automatic assurance of accuracy. The first line of defense should be the prevention of unfairness associated with the lineup itself. *Wade*, 388 U.S. at 235, 87 S.Ct. at 1936.

We are asked to engage in difficult line drawing. The state would have us adopt a rule that the right to counsel is not triggered until the moment of observation between witness and suspect at a lineup. We are aware that other post lineup cases suggest the right to counsel is limited to face-to-face confrontations. *See, e.g. United States v. Cunningham,* 423 F.2d 1269, 1274 n. 3 (4th Cir.1970) (no right to counsel during post lineup interview; right attaches only to "the period during which an accused is within the sight of a potential identification witness"). Such language is dictum.[1] More importantly, these cases fail to answer whether the witness preparation stage is so integral a part of the entire lineup procedure that it may not be treated

separately from the lineup for Sixth Amendment purposes.

Jordan's arguments do not give us much help in determining the bright line. He would have us adopt a rule requiring counsel's presence, based essentially on the risk of undue suggestion. This ignores the requirement that the pretrial event be a "critical" stage where an accused may be overpowered by his professional adversary. Without imposing such limits, a drastic expansion of the right to counsel would result. *See Ash,* 413 U.S. at 316, 93 S.Ct. at 2577. Officers may give instructions to witnesses informally while escorting them to the police station. Or they may talk about the procedure with witnesses several days before the actual lineup. The Sixth Amendment certainly does not require counsel's presence in those situations.

■ We decline therefore to establish a bright line rule for the time when the right to counsel is triggered. Instead, we limit our holding to the facts of this case. Jordan has not demonstrated prejudice from counsel's brief absence when the police gave preliminary instructions to the witnesses. The public defender testified that she did not notice anything unusual about the actual lineup. She monitored that part of the procedure: Even if the period of her exclusion qualified as something resembling a trial-type confrontation, the later trial allowed a full opportunity to explore the subject. Cross-examination revealed Sgt. Scheuffele's embellished comments, which were not overly suggestive. Counsel had the opportunity to reconstruct all aspects of the lineup and related statements between the witnesses and the police.

Obviously, the state could have followed a better procedure to avoid constitutional challenge. If the police were to instruct witnesses at the stationhouse moments before the lineup begins, there is little reason to exclude defense counsel. On such occa-

---

1. In fact, the dictum cuts both ways. Several courts have implicitly assumed that counsel, no matter how passive his role may be, is present at some point before the face-to-face confrontation. *See, e.g. United States v. Wilcox,* 507 F.2d 364, 369 n. 22 (4th Cir.1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975) (holding no right to counsel at post lineup interviews but interpreting the critical phase requiring counsel as "the time period involved in the actual *setting up* and operation of the confrontation of the accused and witness.") (emphasis added).

sions, having an attorney present during all stages of the identification, including the preliminary instructions, would add no inconvenience to the police and would afford an opportunity for defense counsel to observe the fairness and objectivity of the entire lineup procedure. Although Jordan's lineup did not proceed in this manner, we find any error that may have resulted to be harmless.

### III.

Jordan also argues that the district court erred in excluding any mention of the misidentifications and dismissed counts. He contends that this evidence was critical to his defense that a "lookalike" robber had probably committed the charged crimes.

■ Although the Sixth Amendment's guarantee to an accused of "compulsory process for obtaining witnesses in his favor" prevents the state from arbitrarily excluding testimony, *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967), state courts have a strong interest in prompt and efficient trials. We apply a multi-factored balancing test to weigh the competing interests, taking account, among other things, of the importance of the testimony and the purpose of the state's evidentiary rule. *See Perry v. Rushen*, 713 F.2d 1447, 1452–53 (9th Cir.1983), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). In *Perry*, we held that a state court's exclusion of evidence that an alleged "lookalike" committed other crimes in the area where the defendant was arrested did not violate the Sixth Amendment because the evidence was collateral and lacking in probity. *Id.* at 1455.

■ We reject Jordan's compulsory process challenge. We agree with the trial court that the excluded evidence lacked relevancy. This was not evidence that another person had committed the crimes but that some persons, not the witnesses in court, had mistakenly identified Jordan as the robber in other crimes for which he was not being tried.

Jordan fails to show constitutional error because the evidence, even if minimally relevant, could still be excluded if it would confuse the jury. In *United States v. Perkins*, 937 F.2d 1397 (9th Cir.1991), we held that the defendant was not entitled to introduce evidence that the government proceeded against him on four charged robberies but then moved to dismiss three of the four counts. Perkins claimed that the modus operandi of the four crimes showed that the same person committed all of the robberies and that because he was at work during two of them, the robber must have been someone else. We said that such evidence may be excluded "if it is likely to confuse the issues or mislead the jury." *Id.* at 1401.

■ For those reasons, we reject Jordan's argument that the trial court prevented him from effectively cross-examining witnesses by impeaching their credibility with the dismissed counts. "[T]rial judges retain great latitude as far as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about ... confusion of the issues ... or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

Jordan argues that the state "opened the door" to evidence on the dismissed counts by eliciting testimony that he had been a suspect in additional uncharged robberies. Yet the state's witness testified only that three different suspects had been identified on the lineup day. No more was said. We agree with the state appellate court's interpretation of this portion of the record. "[T]he jury was never informed that the defendant had been identified regarding any other cases or regarding the two dismissed counts. The State did not 'open the door'...." *State v. Jordan*, 694 P.2d at 54.

### IV.

■ As to the appellant's final claim, we find no error in the exclusion of Dr. Loftus's testimony. The decision to admit such evidence is left to the broad discretion of the trial judge. The factors considered include whether cross-examination can expose any deficiencies in eyewitness testimony and whether the jury will benefit from

the evidence. *See United States v. Chris-tophe,* 833 F.2d 1296, 1299 (9th Cir.1987); *United States v. Amaral,* 488 F.2d 1148, 1153 (9th Cir.1973).

There is no federal authority that such testimony *must* be allowed. *United States v. Langford,* 802 F.2d 1176, 1179 (9th Cir. 1986), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). We recently upheld the refusal to admit Dr. Loftus's testimony in a similar case. *See United States v. George,* 975 F.2d 1431 (9th Cir. 1992).

The state trial court even left open the possibility that Dr. Loftus could testify if she directed her comments to the specific identifications in the case, rather than the general reliability of eyewitness testimony. Apparently, this offer was not pursued.[2]

AFFIRMED.

**2.** On the state's *in limine* motion to exclude Dr. Loftus's testimony, Jordan admitted that the expert would testify only in general terms. The trial court said it would reconsider if the testimony was about specific identifications. Jordan now contends that there was a showing that the testimony would be more specific. Yet he cites to affidavits that were filed before the *in limine* motion, when he admitted the testimony would only be in general terms.