**UNITED STATES, Plaintiff,**

v.

**Robin SAYA, Robbie Sylva, Frank Burke, Defendants.**

**Crim. No. 95–01065 ACK.**

United States District Court,
D. Hawaii.

June 27, 1997.

Philip D. Bogetto, Honolulu, HI, for Alfredo Bunag.

Rustam Barbee, Office of the Federal Public Defender, Honolulu, HI, Gary Modafferi, Honolulu, HI, for Robbie Sylva.

William Harrison, Harrison & Matsuoka, Honolulu, HI, for Robin Sidney Saya.

Myles S. Breiner, Honolulu, HI, for Clinton Mau.

Jerry I. Wilson, Michael Jay Green, David F. Klein, Honolulu, HI, for Frank Burke.

Michael Jay Green, Jeffrey T. Arakaki, Honolulu, HI, for Harland Kiliona Kanahele.

Florence T. Nakakuni, U.S. Attys. Office, Honolulu, HI, for U.S.

### ORDER PARTIALLY GRANTING GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY AND INCREASED COURT AND JURY SECURITY MEASURES

KAY, Chief Judge.

### BACKGROUND

Soon after the first trial resulted in a mistrial, the government filed the instant motion for an anonymous jury and for increased court and jury security measures. Through the motion, the government seeks employment of an anonymous jury. On a practical level, the government seeks to omit the "names, phone numbers, addresses or place of employment of any jurors." *See* Government's Motion, pg. 7. During voir dire, the government proposes that each juror be referenced by a number and that the parties have the opportunity to question on "background, age, employment (without specifying names of companies), family mem-

## 1154

bers without disclosing identities."[1] The government also seeks greater security measures.[2]

### DISCUSSION

■ The Ninth Circuit has yet to address the issue of an anonymous jury. Six other circuits have addressed the issue, however, and found them constitutionally permissible in certain situations. *See e.g. United States v. Paccione,* 949 F.2d 1183 (2nd Cir.1991); *United States v. Scarfo,* 850 F.2d 1015 (3rd Cir.1988), *cert. denied,* 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988); *United States v. Salvatore,* 110 F.3d 1131 (5th Cir. 1997); *United States v. Crockett,* 979 F.2d 1204, 1215–17 (7th Cir.1992); *United States v. Ross,* 33 F.3d 1507 (11th Cir.1994); *United States v. Edmond,* 52 F.3d 1080 (D.C.Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 539, 133 L.Ed.2d 443 (1995).

■ These courts have not empaneled an anonymous jury "without (a) concluding that there is a strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Paccione,* 949 F.2d 1183, 1192 (2nd Cir.1991). In determining whether a jury needs protection, a number of these circuits have relied on a five factor analysis. *United States v. Salvatore,* 110 F.3d 1131 (5th Cir. 1997); *United States v. Paccione,* 949 F.2d 1183 (2nd Cir.1991); *United States v. Ross,* 33 F.3d 1507 (11th Cir.1994); *United States v. Edmond,* 52 F.3d 1080 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 539, 133 L.Ed.2d 443 (1995). The five factors are: (1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the

defendant will suffer lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment

*Ross,* 33 F.3d at 1520. The Court finds these factors reasonable. Thus, it adopts this analysis as its own in deciding the instant motion.

#### 1. *Defendant's involvement in organized crime*

Compared to other cases involving an anonymous jury, this factor is not strongly present in this case. *See e.g. United States v. Paccione,* 949 F.2d 1183 (2nd Cir.1991) (Defendant a member of the Gambino Crime Family). There was no evidence in the first case that Defendants were members of the mafia, or any organized crime family. However, Mr. Bunag testified that this alleged drug conspiracy had been operating for some period of time, with different geographic areas of the island having been assigned to specific defendants and other persons. Moreover, Defendant Saya has been convicted of murder, and a search of the residence of Defendants Sylva and Burke revealed an automatic assault rifle (like those used by SWAT teams) and equipment to intercept police calls and detect a body recorder. This factor alone, however, does not support the empanelment of an anonymous jury.

#### 2. *The Defendant's Participation in a Group with the Capacity to Harm Jurors*

This factor favors granting the government's motion. During the first trial (which lasted in excess of eight weeks), the courtroom was filled every day with the Defendants' supporters. At times, these supporters engaged in disruptive conduct. Such behavior resulted in the Court warning the

---

1. The Court will also provide information on the geographic area where jurors reside (i.e., Aiea, Oahu, zip code).

2. As part of enhanced security, the government requests that the Marshals escort the jurors from an undisclosed location every morning to the courthouse and escort them back after court concludes each day. The government also seeks

that a deputy marshal be assigned to the jury throughout the day and that jurors' breaks be taken away from the courtyard and other areas where the public congregates. Finally, the government requests that all attendees of the trial show identification before being allowed in court.

audience that further disruption would not be tolerated.

During the first trial, this Court made several rulings concerning jury intimidation and tampering and intimidation of a witness, as a result of observations reported by Deputy Marshals, Court Security Officers, and government counsel. This included Court directions that lunch be brought in to the jury lounge during the deliberations. The government also documented that after the trial was concluded five jurors informed the government that they felt intimidated by some of the supporters of the Defendants who attended trial on a daily basis. After the trial, two jurors were approached by the local males who followed them and told them "we know where you live." Moreover, on another day, one of the jurors' car was "keyed," an incident the juror believed to be more than coincidental. Other jurors reported after the trial that they felt supporters of the Defendants glared at them and that they had to run a "gauntlet" when they entered and exited the courtroom. At least one juror was concerned for her safety in the event how she voted became public knowledge upon polling the jury.[3]

In addition to intimidation, the jury in the first trial was also tampered with. According to one juror, she received a phone call at home on December 2, 1996 telling her not to report to court the next day. Relying on the phone call (made at 10:30 p.m.), the juror did not attend the trial the next day. Authorized court personnel, however, did not make the telephone call. Based on Defendants' objections, she was excused from further duty.

Adhering to the presumption of innocence, this Court does not allocate blame for this incident on any one party. However, it will not tolerate its jurors being tampered with. The anonymous jury, although no panacea, will reduce the likelihood of another such juror tampering incident.

Taken together, these incidents demonstrate that Defendants are members of a group with the capacity to harm the jurors.

3. *Defendant's Past Attempts to Interfere with the Judicial Process*

This factor favors the empanelment of an anonymous jury. First, Defendant Saya has a state conviction for intimidating a witness and for murder. Granted, it is twenty years old, but it still establishes a history of interfering with the judicial process.

The remaining Defendants have no convictions for interfering with the judicial process. Nevertheless, attempts to interfere with the judicial process were taken during the last trial. The Court has earlier listed occurrences of jury and witness intimidation. The most serious incident, the subject of an FBI investigation, was the jury tampering discussed above.

4. *The Potential that, if Convicted, the Defendant will suffer Lengthy Incarceration and Substantial Monetary Penalties*

All the Defendants here face lengthy incarceration (at least ten years and up to life), significant monetary penalties (up to 4 million dollars) and forfeiture of over $400,000. Facing these penalties, they have the incentive to tamper with the jury.

5. *Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment*

This case has been the subject of newsstories and routine television coverage. After the last trial, efforts were made by the press the contact the jurors. This factor, therefore, also favors the empanelment of an anonymous jury.

In conclusion, four of the five factors strongly favor the empanelment of an anonymous jury. These factors convince this Court that an anonymous jury would best

---

**3.** According to the government, moreover, the jurors were not the only target of intimidation. Rather, the government claims that an alleged supporter of the Defendant Sylva pointed his thumb and forefinger in the shape of a gun towards FBI Case Agent Kelly, a witness, and said "boom." Upon being informed of this the Court ordered the parties to submit names of their supporters who had been present at the time, but the individual was not located.

serve the interests of justice. The Court does not take this step lightly. The Court in its ten years on the bench has never before empaneled an anonymous jury. But after careful consideration, the Court concludes that there is a strong reason to believe that the jury needs protection from a replay of the intimidation and tampering that beset the first trial. Any prejudice to the parties, moreover, will be *de minimis* because the Court will take every measure within its power to ensure that the Defendants receive a fair trial. In furtherance of this aim, the Court has ordered all parties to submit further jury instructions and voir dire questions that will provide neutral, innocuous explanations for the measures taken with this order.

*Greater Security Measures*

■ Enhanced security measures implicate the Sixth Amendment right to a fair trial, and the concomitant presumption of innocence. *Morgan v. Aispuro*, 946 F.2d 1462, 1465 (9th Cir.1991). "Certain courtroom arrangements may prejudice this presumption [of innocence]." *Id.* at 1464.

■ Based on its earlier findings, the Court concludes that additional security measures should be taken to ensure the protection of the jury and the parties receive a fair trial. Lunch will be brought in to the jury lounge, as it was during jury deliberations in the first trial. During breaks, the jury will use the interior secured elevators and will utilize the rooftop jury lounge, which will afford smoking for those who wish. A Deputy Marshal or CSO will also assist the jury in arriving and leaving the Court each day. The Court will not require at this time that attendees show identification at the courtroom door, as the Court concludes that it does not appear that such a measure is necessary. However, a Deputy Marshal will be in attendance in the audience, in plain clothes, and the order attached as an addendum hereto will be read to the audience outside of the presence of the jury.

### CONCLUSION

For the foregoing reasons, the Court partially GRANTS Defendants' motion for an anonymous jury and increased court and jury security measures.

IT IS SO ORDERED.

### Appendix

### *GENERAL ORDER*

In order to maintain the proper decorum of these proceedings and to insure a fair trial to both the defendant(s) and the government, the Court hereby orders and directs that all participants in this case and all spectators in the courtroom shall abide by the following:

1. There shall be no attempt to intimidate a witness or juror. There shall be no attempt to talk with or gesture to any juror or witness in the courtroom during proceedings or when they are entering or leaving the courtroom, except by counsel in the active exercise of his or her representation in accordance with accepted courtroom practice. There are security cameras in this courtroom and in the hallways.

2. There shall be no visual display of approval or disapproval of any witnesses' answers.

3. There will be no loud talking, chanting, or other disruptive behavior permitted in the courtroom or in the courthouse hallways or common areas.

4. There shall be no attempt made to contact any juror in this case regarding any matter connected with this case.

Failure to abide by this Court's orders may constitute contempt of Court and/or a serious violation of federal law. This Court will not hesitate to have anyone who disrupts these proceedings by engaging in any of the conduct described above removed from the courtroom and barred from further attendance at this trial.

These orders are necessary to insure that in this trial both the defendant(s) and the government have the opportunity to present their case to the jury free from any suggestion of undue outside influence.

Also, the Deputy Marshals and Courtroom Security Officers have the authority, without further direction from the Court, to correct the following in court behavior: (1) reading

of newspapers, magazines or other like materials; (2) children running in aisles or otherwise disrupting proceedings; (3) sleeping in the courtroom; and (4) entering the courtroom in obviously inappropriate dress, such as barefoot, no shirt, etc.

IT IS SO ORDERED.